407 So.2d 25 (1981)
Larry McELROY, Plaintiff & Appellee,
v.
James C. VEST, et al., Defendants & Appellants.
No. 8439.
Court of Appeal of Louisiana, Third Circuit.
November 10, 1981.
Rehearing Denied January 4, 1982.
Writ Denied February 19, 1982.
*26 Voorhies & Labbe, W. Gerald Gaudet, Lafayette, Edwards, Stefanski & Barousse, Russell K. Zaunbrecher, Crowley, for defendants-appellants.
Simon & Dauterive, J. Minos Simon, Lafayette, Guillory, McGee & Mayeux, Donald L. Mayeux, Eunice, for plaintiff-appellee.
Welton P. Mouton, Jr., Lafayette, for intervenor-appellee.
Provost, Ernest & Schwing, James W. Schwing, Armentor & Wattigny, Gerard B. Wattigny, New Iberia, Davidson, Meaux, Sonnier & Roy, V. Farley Sonnier, Lafayette, for defendant-appellee.
*27 Before CULPEPPER, CUTRER and LABORDE, JJ.
CULPEPPER, Judge.
This is an executive officer negligence action arising out of events that occurred prior to the enactment of Act 147 of 1976 amending LSA-R.S. 23:1032, which now precludes such action. Plaintiff, employed as a welder by Gulf Marine Fabricators, Inc., hereinafter Gulf Marine, sustained a serious and disabling injury to his back when he fell through a hole in the steel floor of a production platform in Gulf Marine's storage yard. Alleging the accident and resulting injury were caused by the negligence of Gulf Marine's executive officers, in failing to cover or place a rail around the hole, plaintiff sued the executives and their liability insurer. Gulf Marine's workmen's compensation insurer intervened, seeking recovery of compensation benefits paid and to be paid to the plaintiff. The defendants denied negligence and, alternatively, plead plaintiff's contributory negligence as a bar to recovery. After trial before a jury, a verdict was returned in favor of plaintiff and against certain of the defendants in the amount of $890,416.66, of which $13,243.04 was due the intervenors for medical expenses and $19,075 due for compensation benefits paid. From a judgment rendered accordingly, defendants appealed. The intervenor answered the appeal, requesting certain modifications of the judgment.
All defendants-appellants raise the following issues on this appeal: (1) Whether the jury erred in holding that plaintiff was not contributorily negligent; (2) whether the jury instructions on the issue of contributory negligence were inapplicable to this case and also an incorrect statement of the law, thus misleading and confusing the jury; (3) whether the amount of damages awarded by the jury was so excessive as to constitute an abuse of discretion. Defendant, James Vest, individually, raises an issue as to whether he should be relieved of liability by reason of his belief that the corporation's duty to provide a safe place to work had been fulfilled by one of his superiors.
GENERAL FACTS
Plaintiff had been employed as a welder by Gulf Marine for almost two years. On February 26, 1975, he received instructions from defendant, James Vest, to go to Gulf Marine's salvage and storage yard at the Port of New Iberia to remove the stairway from one of two platforms for use on another structure. Plaintiff and his helper, Donald Dugas, gathered the necessary equipment for the job, drove to the jobsite and awaited further instructions from Vest as to which of the stairways plaintiff was to remove. He was later instructed to make his own choice as to which was the better stairway and to remove it.
Plaintiff examined the two and made his choice. The stairway in question was attached to the top section of a rectangular production platform situated on four legs. The structure had a grated steel deck or floor, i.e., a mesh-type floor with one-inch by three-inch spacing between the steel strips, such that the ground is visible through the floor in all areas. The first floor of the structure, located at the top of the stairway, was some 15 to 18 feet above the ground. Plaintiff fell through a hole in this floor.
CONTRIBUTORY NEGLIGENCE
Defendants urge two errors in the finding of no contributory negligence. First, they contend the jury's finding that plaintiff was not contributorily negligent is clearly contrary to the evidence. They argue the evidence establishes that McElroy saw or should have seen and avoided the hole. They rely heavily on the testimony of McElroy's 19-year-old helper, Donald Dugas. The essence of Dugas' testimony was that the existence of the hole was readily apparent, that he saw the hole before they started to work, and that McElroy knew the hole was there and knew it was dangerous. He was very clear on these points but became confused and unclear regarding other events of the day. Furthermore, he contradicted certain testimony he had given previously in his deposition.
*28 Defendants also rely on testimony by executives Nugent and Merrill that when they visited McElroy at the hospital after the accident, he admitted he was at fault.
Also, defendants argue photographs of the "large" hole make it difficult to believe plaintiff did not see it. The evidence shows the hole was about two feet by five feet and was approximately in the middle of the deck, about six feet from the top of the stairway.
Plaintiff testified he was totally unaware of the hole before he fell through it. He said his attention was directed at the stairway and the places where he would be working. He first cut the cable, holding the bottom of the stair, and then planned to cut the pins in the hinges holding the top of the stairs. The stairway was on the outside of the platform and lead up to an opening in the railing which went around the outer edge of the deck. It was plaintiff's testimony that as he climbed the stairs he was concentrating on carrying his torch and a sufficient length of hose. He had the hose coiled around his left arm. Approximately 100 feet of hose was strung out to his oxygen tank. At the top of the stairway, he walked a distance of about eight feet to his left along the railing of the platform deck and tied the hose to the railing, leaving enough hose from that point to the place where he was going to cut the pins at the top of the ladder. As he returned toward the top of the ladder, he discovered that the hose was tangled on the floor and was lying in the area where he would have to be cutting the pins, so he started backing up and whipping the hose around with his arm. At this point, plaintiff was facing the top of the stairway, which meant that he was facing away from the hole. While he was thus engaged, he stepped back into the unguarded hole and fell a distance of 15 to 18 feet to the ground below.
Plaintiff also testified that he knew from previous employment as a welder that any holes in the floor of the platform should have been covered or should have had a railing around them. Thus, he says he assumed that any holes would be covered or have rails.
Furthermore, plaintiff testified, contrary to the testimony of Dugas, Nugent and Merrill, that he did not recall making any statements to anyone after the accident admitting that he was at fault for falling through the hole.
From the above description of the evidence, it is obvious that the question of whether plaintiff saw or should have seen and avoided the hole is one of fact depending largely on the credibility of the witnesses. The applicable rules of law are well established in our jurisprudence. First, it is fundamental that the defendant bears the burden of proving the plaintiff was contributorily negligent. Factual findings of the jury, particularly those based on evaluations of credibility, should not be reversed on appeal unless manifestly erroneous or clearly wrong. Canter v. Koehring Company, 283 So.2d 716 (La.1973); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Jurisprudence has developed certain special rules for determining whether a work-related accident is caused in part by the contributory negligence of the employee. In Miller v. Employers Mutual Liability Insurance Company, 349 So.2d 1353 (La.App. 2d Cir. 1977), the court reviewed the jurisprudence and stated the following general rules:
"Emerging as criteria for determining an employee's contributory negligence are: (1) relative knowledge of the danger by the supervising employee and the injured employee; (2) relative control over the employee's situation; (3) the degree to which the employee's conduct is voluntary on his part; (4) alternatives available to the employee; (5) obviousness of the danger; and (6) relative ability to eliminate the danger."
Applying these rules to the present case, we do not find the jury was manifestly erroneous or clearly wrong in concluding that the plaintiff was not contributorily negligent. The jury could have reasonably concluded plaintiff did not actually see the hole before he fell, because it was not an *29 obvious danger, his duties required that his attention be directed elsewhere, and he had a right to rely to some degree on defendants' duty to cover the hole or place a rail around it.
THE JURY INSTRUCTIONS
The defendants next contend the jury instructions on contributory negligence were inapplicable to this case, as well as being an incorrect statement of the law. They argue that the jury was therefore mislead as to the proper standard by which to judge the conduct of the plaintiff. Proper jury instructions are those which fairly and reasonably point up the issues presented by the pleadings and the evidence, and which provide correct principles of law for the jury's application thereto. Hanks v. Drs. Ranson, Swan and Birch, Ltd., 359 So.2d 1089 (La.App. 3rd Cir. 1978), writ denied 360 So.2d 1178 (La.1978); Hebert v. Ordoyne, 388 So.2d 407 (La.App. 1st Cir. 1980).
The charges to the jury first followed generally the six criteria for determining an employee's contributory negligence, quoted above from Miller v. Employers Mutual Liability Insurance Co., supra. Defendants object in particular to the following charges given at the request of plaintiff's counsel, and to which defendants objected:
"The workman is not to be held contributorily negligent because he does work assigned to him under dangerous conditions which his employer is responsible and which assignment he must work or suffer dismissal. However, while it may be true that the reasonable man would wish to avoid none risk, an employee is not entirely free to do so. He cannot simply decline to do the work, because he would then subject himself to loss of his job, support for his family. (sic)
Where dangers are unreasonable, their obviousness standing alone does not necessarily relieve the defendant of responsibility for their presence. Although, the plaintiff may have been under a duty to avoid harm likely to result to him from open and obvious dangers, he may not be in a position to avoid the danger even if he was aware of it. For instance, his attention may have been distracted or his duties may require is (sic) unavoidable presence near the danger and exposure to it. In such circumstances, the defendant would be best able to anticipate and prevent the harm from the obvious dangers on the premises under his control and would, therefore, be under a duty to take corrective action."
Defendants argue the above quoted charge is inapplicable to the present case because there was no evidence that plaintiff was forced to work under hazardous conditions or suffer dismissal. They point to the testimony that plaintiff actually chose the platform from which he was cutting the stairway. They also point to the evidence that plaintiff was under no pressure of time to accomplish his job and was under no threat that he could lose his job if he did not perform this task in a particular way.
Defendants also argue the above quoted charge is erroneous because it unduly emphasizes the idea that plaintiff could not decline to do the work under hazardous conditions.
We have carefully reviewed all of the judge's charges to the jury and find they fairly and reasonably point up the issues presented by the pleadings and correctly state the applicable principles of law. At trial, defendants introduced much testimony in an effort to show that plaintiff was not assigned to work under dangerous conditions, that plaintiff actually chose the platform and that he was under no pressure to perform the work or suffer dismissal. Of course, defendants also introduced much testimony in an effort to show that the hole was so obvious that plaintiff saw or should have seen and avoided it. All of these were issues in the case.
DAMAGES
Defendants vigorously contend the jury's award of $890,416.66 constitutes an abuse of discretion. They cite numerous cases wherein severe injuries received lesser *30 awards. The principles of review governing this issue are well settled. First, to modify the amount of an award for general damages, an appellate court must find that the trial judge or jury abused the much discretion accorded by LSA-C.C. Article 1934. Second, the awards in other cases serve only as an aid in determining whether there has been an abuse of discretion. They provide no frame of uniformity. Miller v. Thomas, 258 La. 285, 246 So.2d 16 (La.1971); Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976). A reviewing court might well disagree with the amount of the award fixed by the jury, but cannot on that basis alone substitute its opinion for that of the trier of fact. Spillers v. Montgomery-Ward & Company, Inc., 294 So.2d 803 (La. 1974). An award which is so excessive that it constitutes an abuse of the jury's discretion should be reduced to the highest point which is reasonably within that discretion. Reck v. Stevens, 373 So.2d 498 (La.1979).
The principal treating physician was Dr. William Meuleman, an orthopedic surgeon. He testified plaintiff sustained fractures of the transverse processes of L-1, L-2, and L-3, and a multi-fragment fracture of L-4. Plaintiff was first strapped in a bed to prohibit any kind of movement, pending preparation to surgically fuse all of the injured vertebrae. On April 3, 1975, Dr. Mueleman fused the vertebrae, starting with the third lumbar and then proceeding down into the solid sacrum, so that it would be a 3-level fusion. The discs were removed between these vertebrae, and bone, taken from the posterior ilium, was used to place in the disc spaces. Immediately after the surgery, Dr. Meuleman was optimistic, but by November of 1975 it was apparent the fusion between L-4 and L-5 had failed.
On May 24, 1976, another attempt was made to fuse L-4 and L-5, this time using bone from the opposite side of the hip. However, by February of 1977 Dr. Meuleman concluded this second surgery had also failed. Plaintiff again submitted to surgery on July 12, 1977, but this also failed. The result is that plaintiff will never be able to perform any physical activity which places a strain on his lower back. Moreover, arthritic spurring will probably cause the condition to worsen. Dr. Meuleman stated that in his opinion plaintiff would be unable to engage in any gainful occupation for the rest of his life, and, moreover, would have considerable pain, even when sitting, standing, or walking for long periods of time.
As to damages for past and future loss of wages, the evidence shows that at the time of the accident plaintiff was earning a gross wage of $1,163.44 per month. From the time of trial to the date of the accident, his loss of wages was $90,936. Plaintiff was 30 years of age at the time of the accident and had a life-work expectancy of 32.2 years. An expert economist testified his gross loss of wages from date of trial to the end of his life-work expectancy would be $1,166,095. Using an 8% discount rate on loss of future wages resulted in a net loss of $374,089 for future wages. This added to the loss of past wages in the sum of $90,936, results in a total of $465,025.30 in loss of past and future wages.
The medical expenses through September 8, 1980 totaled $13,243, and, of course, there will be substantial additional future medical expenses.
Adding, in round figures, $465,000 for past and future loss of wages to the past medical expenses in the sum of $13,000 produces a total of $478,000. This means that there was an award of approximately $412,000 for future medical expense and general damages.
Plaintiff's injuries are painful, disabling and permanent. The expert medical testimony is that his condition will worsen. We do not find that the jury abused its much discretion as to the award.
LIABILITY OF DEFENDANT, JAMES VEST
The jury found that James Vest was guilty of negligence which was a proximate cause of the accident. Vest seeks to escape liability based on the argument that he had reason to believe the company's duty to *31 furnish plaintiff a safe place to work had been fulfilled by one of his superiors.
It was uncontradicted that two of the defendants, Mr. Vest and Mr. Merrill, had been to the New Iberia yard in question the day before the accident to view some of the rigs there. They both testified they had looked at the rig from which plaintiff fell.
Mr. Vest was the person responsible for sending plaintiff out on the job assignment. He was a superintendent for Gulf Marine, working under Mr. Merrill, and had the responsibility of inspecting all jobsites, in part to make sure they were safe. Mr. Merrill was apparently Mr. Vest's immediate supervisor and was manager of operations for Gulf Marine at the time of the accident. Both of these defendants testified that their "inspection" of the structure only took a few minutes.
At trial, Merrill testified that he did not go upon the structure, although he said in his deposition that he did. Vest did not recall Merrill going on the platform, and he testified that he did not go on the platform. Despite the uncertainty of the testimony, it was apparent that a thorough inspection of the structure in terms of safety considerations was not conducted by anyone. In light of Mr. Vest's specific duty of inspecting jobsites for safety and his knowledge that only a cursory inspection had been made, we find no manifest error in the jury's conclusion that Mr. Vest failed to fulfil his duty toward plaintiff.
CLAIM OF INTERVENOR
Hartford Accident & Indemnity Company, as intervenor for workmen's compensation benefits, has answered defendants' appeal to request certain revisions in the judgment, so as to adequately protect Hartford for reimbursement of compensation benefits paid and to be paid in the future. The pertinent portion of the judgment reads as follows:
"`It is further ORDERED, ADJUDGED and DECREED that intervenor, Hartford Accident & Indemnity Company, does recover judgment against James V. Vest, Jack "John" Merrill, Phil Nugent and Hartford Accident & Indemnity Company for the aggregate amount of medical, hospital, pharmaceutical and other expenses paid by intervenor to and/or for and on behalf of plaintiff, "`Larry McElroy, in the total sum of THIRTEEN THOUSAND TWO HUNDRED FORTY-THREE AND 04/100THS ($13,243.04) DOLLARS through September 8, 1980 and for the additional sum of NINETEEN THOUSAND SEVENTY-FIVE AND NO/100THS ($19,075.00) DOLLARS representing the payment of compensation benefits at the rate of $65.00 per week through September 8, 1980 and further recover all future medical, hospital, pharmaceutical and other similar expenses that it might pay in the future up to and including the date that this judgment shall become final; payment of this judgment in favor of intervenor shall be made by preference from the proceeds and funds which shall be paid to and received by plaintiff in satisfaction of the judgment herein rendered in plaintiff's favor and against James C. Vest, Jack "John" Merrill, Phil Nugent and Hartford Accident & Indemnity Company....'" (Emphasis supplied)
The contention is that Hartford is not adequately protected by the judgment as it reads in that no provision is made for possible future compensation benefits accruing after the date of the satisfaction of the judgment. Hartford requests that the judgment be amended to conform with the judgment rendered in Billeaud v. United States Fidelity & Guaranty Company, 349 So.2d 1379 (La.App. 3rd Cir. 1977), wherein the compensation insurer was allowed a credit against any obligation which it might owe to the worker for future compensation after the date of satisfaction of the tort judgment. The judgment in the present case, quoted above, gives the intervenor credit only to the date the tort judgment becomes final. We agree the present judgment should be amended to conform with that in Billeaud.
For the reasons assigned, the judgment appealed is amended so as to add an additional *32 paragraph reading as follows: "It is further ordered, adjudged and decreed that such portion of the amount of the judgment herein in favor of Larry McElroy and against the defendants as above named, which exceeds the amount which the intervenor, Hartford Accident & Indemnity Company, is entitled to be paid, shall be credited against any obligation which Hartford Accident & Indemnity Company may owe to Larry McElroy for future workmen's compensation benefits, medical expenses or otherwise accruing after the date of satisfaction of this judgment." Otherwise, the judgment appealed is affirmed. All costs of this appeal are assessed against the defendants-appellants.
AFFIRMED, AS AMENDED.