451 So.2d 1152 (1984)
Gladys Brown THOMAS, et al., Plaintiffs-Appellants,
v.
MISSOURI-PACIFIC RAILROAD CO., et al., Defendants-Appellees.
No. 83-532.
Court of Appeal of Louisiana, Third Circuit.
May 17, 1984.
*1154 David W. Robertson and Susan Theisen, Alexandria, for plaintiffs-appellants.
Provosty, Sadler & deLaunay, F. Rae Swent, LeDoux R. Provosty, Jr. and Ronald J. Fiorenzi, Alexandria, Robert L. Oliver, Baton Rouge, Michael Davis, Alexandria, for defendants-appellees.
C. James Hicks, Alexandria, Charles F. Wagner, Pineville, for plaintiff-appellee.
Before DOMENGEAUX, GUIDRY and DOUCET, JJ.
DOUCET, Judge.
On June 24, 1981, a train-auto collision occurred which resulted in the death of the driver and one passenger and seriously injured another passenger. In bifurcated and consolidated actions[1], the jury returned a verdict in favor of defendant, Missouri-Pacific Railroad Co. (Mo-Pac), and the trial judge rendered judgment in favor of defendant, State of Louisiana.
The findings exonerating defendants Mo-Pac and the State are appealed. In addition to other procedural issues presented on appeal, the plaintiffs question the propriety of the trial judge's revocation of his prior grant of a new trial with regard to defendant Mo-Pac.
The facts and issues are as follows:
At approximately 10:00 P.M. on June 24, 1981, Herman Thomas was driving a 1975 Cadillac on Sugarhouse Road in Alexandria, Louisiana. Thomas, accompanied by two women, Sandra Mock and Florine Beard, en route to dinner at a nearby restaurant, had the car windows up, the air conditioner on, and the tape player was playing gospel music. As the Thomas vehicle approached the railroad crossing, a Missouri-Pacific train was coming down the track from his left at approximately 35 m.p.h. At the same time, two boys on bicycles passed across the railroad tracks whereupon the engineer, Billy Adams, began blowing the whistle. As the boys cleared the crossing, the Thompson vehicle came into view when the train was approximately 250 feet away. The engineer testified he had no reason to believe the car would not stop as he continued to blow the whistle, however, when the car passed the cross-arms at a slow rate of speed, the engineer put the train into emergency. The automobile was struck by the freight train and carried 1,500 feet down the track, killing the driver and Mock passenger and seriously injuring the Beard passenger.
The intersection of Sugarhouse Road and the Missouri-Pacific tracks is located within the City of Alexandria and within the Missouri-Pacific railroad yard. Sugarhouse Road runs generally east-west at that point, and the railroad tracks run generally north-south. The automobile was west-bound, and the train was north-bound. Sugarhouse Road crosses three separate tracks at that crossing. The crossing is controlled only by a stationary cross-arm sign; there are no signal lights, bells, or barricades. Lighting clearly illuminated the intersection.
Located at the southeast quadrant of the intersection, i.e., on the motorist's left and the trainmen's right as each approached the crossingthere is located a windowless *1155 metal storage building, 90 feet long by 24 feet wide. This building was owned by the State of Louisiana. Its position somewhat impaired the view of west-bound motorists and north-bound trains of each other.
The railroad's rules call for a maximum speed of 20 m.p.h. at the location in question, however, it appears the train was proceeding at a speed of approximately 35 m.p.h. Appellants contend that if the train had been proceeding at 20 m.p.h. or slower, and/or had the metal storage building not obstructed visibility, the accident could have been avoided. Appellees maintain the accident was the sole fault of Thomas in failing to notice the oncoming train.
The driver of the automobile, Herman Thomas, and the rear-seat passenger, Sandra Mock, were killed. The front-seat passenger, Florine Beard, was severely injured. Three tort actions were brought in the district court and these actions were subsequently consolidated for trial.
Florine Beard sued the railroad, the engineer, Billy R. Adams, the State of Louisiana, and the unopened succession of Herman Thomas. Prior to trial, Beard settled with Mo-Pac, Adams, and Thomas, leaving for trial only the action against the State. The State filed a third-party demand against Mo-Pac. In addition, the State filed a third party demand against Manuel and Bonnie Henry and John and Judy Hall, hereinafter referred to as the "Henry defendants" alleging that they had erected the metal storage building and that they, and not the State, owned it at the time of the accident.
Herman Thomas was survived by his widow and four adult daughters. The Thomas plaintiffs sued Mo-Pac, the State, the City of Alexandria, and the Henry defendants. Prior to trial the action against the City of Alexandria was dismissed without prejudice. The State filed third-party demands against Mo-Pac and the Henry defendants. The Henry defendants filed a third-party demand against Mo-Pac.
Sandra Mock was survived by four minor children. Through their provisional tutrix, the Mock children sued Mo-Pac and the State. Prior to trial the Mocks settled with Mo-Pac. The State filed third-party demands against Mo-Pac and the Henry defendants.
Mo-Pac demanded a jury trial of all the actions against it. No other party sought a jury trial.[2] Thus, the case that went to trial consisted of a combined jury trial wherein the Thomas' claim against Mo-Pac was tried, and a bench trial wherein all plaintiffs' claims against the State, and Thomas' claims against the Henry defendants, was tried. The trial judge originally decided to hear the cases against the defendants other than Mo-Pac in the jury's presence, but changed his mind about the procedure midway through the trial. The result was that the jury heard some but not all of the evidence presented by counsel for the Beard and Mock plaintiffs, and some but not all of the defensive evidence presented by the State and the Henry defendants. Plaintiffs contend that the procedure employed constitutes reversible error.
The trial judge ruled that the State, and not the Henry defendants, was owner and custodian of the metal storage building that blocked the view at the crossing in question, and subsequently granted judgment exonerating the Henry defendants. No appeal has been taken from that judgment.
The jury returned a verdict in favor of Mo-Pac. Subsequently, the trial judge found the operator of the vehicle was solely at fault and accordingly rendered judgment exonerating the State.
Subsequently all plaintiffs moved for a new trial against the State, and the Thomas plaintiffs moved for a new trial against Mo-Pac. On January 4, 1983, the trial judge issued reasons for judgment granting the Thomas plaintiffs a new trial against Mo-Pac and denying all plaintiffs a new trial against the State. Nevertheless, on January 31, 1983, the trial judge, in *1156 response to a request for rehearing of the judgment granting a new trial against Mo-Pac, revoked his prior order, finding the jury instructions complained of by movants constituted harmless error.
When the trial judge revoked his judgment granting the Thomas plaintiffs a new trial against Mo-Pac, the Thomas plaintiffs sought writ of review from this Court, contending that there was no compliance with any procedure whereby the trial judge could revoke or recall a judgment granting a new trial, and that the denial of the new trial on "judicial economy" grounds violated this Court's pronouncements against denying new trials on such grounds. This court denied the Thomas plaintiffs' writ application on the basis that the trial court had never signed a final judgment granting plaintiffs the new trial against Mo-Pac. The controversy over the finality of the motion for new trial centers on the trial judge's language in his reasons for judgment of January 4, 1983, wherein he stated that "the Thomas motion for a new trial as to Missouri-Pacific is granted". Also, the Minute Entry for January 4, 1983 states "For written reasons this day assigned, judgment is rendered granting the Thomas motion for a new trial as to the Missouri-Pacific...." Furthermore, the court's oral reasons for judgment denying the new trial were premised, inter alia, upon "judicial economy" grounds. The Thomas plaintiffs contend that final judgment was indeed rendered granting them a new trial against Mo-Pac, and re-urge their contentions that the trial judge's action in revoking the judgment granting a new trial was improper and without authority.
The Thomas plaintiffs have appealed from the judgment on the jury's verdict exonerating Mo-Pac and from the trial court's judgment denying their motion for a new trial against Mo-Pac. All plaintiffs have appealed from the trial judge's judgment exonerating the State and from the judgment denying plaintiffs' new trial motion against the State.
With respect to the action against Mo-Pac, the issues are the correctness of the jury's determination that Mo-Pac was free of fault, the correctness of the procedures employed by the trial court whereby the jury heard only portions of the evidence (having been excluded from hearing certain testimony against the State), the correctness of the trial court's jury instructions, and the correctness of the trial judge's action in revoking or recalling his judgment granting plaintiffs a new trial.
With respect to the actions against the State, the issues are the correctness of the trial judge's determination that the State was free of liability in maintaining the storage building which limited visibility and the correctness of the trial judge's decision denying plaintiffs a new trial.
Appellants have specified the following Assignments of Error:
1. The trial court erred in adjudging the defendant railroad free from fault, when the evidence clearly established that the railroad was in violation of its own 20 m.p.h. speed limit by traveling at a speed of at least 35 m.p.h., and when the evidence also clearly established that a warehouse constituted a serious obstruction to visibility at the grade crossing in question.
2. The trial judge erred in removing the jury from the courtroom during critical testimony of key liability witnesses.
3. The trial judge erred in charging the jury, in effect, that the motorist, rather than the railroad, has the principal responsibility for avoiding a grade crossing collision.
4. The trial judge erred in revoking or recalling his judgment granting plaintiffs a new trial against the railroad.
5. The trial judge erred in holding that the fault of the motorist barred recovery on behalf of the motorist's survivor's as "fault of the victim" under La.C.C. art. 2317, and in holding that the motorist's fault barred recovery on behalf of the automobile passengers as "fault of a third person" under La.C.C. art. 2317.
The evidence established that the engineer was exceeding the speed imposed by the railroad itself (20 m.p.h.) and appellants *1157 contend this violation of the self-imposed regulation constitutes negligence per se. Appellants also point to Mo-Pac's knowledge of the presence of the metal building and its obstruction to visibility in arguing the jury was clearly wrong in finding Mo-Pac was free of fault.
Appellants cite Illinois Central R.R. Co. v. Cullen, 235 So.2d 154 (La.App. 4th Cir. 1970), writ ref., 256 La. 789, 239 So.2d 172 (1970), which states in part:
"... a safety regulation of the Railroad designed for its own operation may be adopted by the Court as the standard of care to measure the conduct of the Railroad in determining whether or not the Railroad was guilty of negligence ..." (emphasis added)
The purpose of Mo-Pac's 20 m.p.h. speed limit was to protect railroad employees and equipment and "safety as all are involved".
However, it is clear from the emphasized language from Cullen, that violation of one's own regulation is only one factor a court may, in its discretion, consider in determining whether a party is at fault. It should be noted that the train was not exceeding the 45 m.p.h. municipal speed limit imposed by the City of Alexandria.
The record reveals that had the train been traveling at its self-imposed speed of 20 m.p.h., instead of 35 m.p.h., only three additional seconds would have elapsed before impact. Given the slow speed at which the Thomas vehicle was crossing the tracks, the collision would have occurred regardless of the train's speed.
Appellants also cite Fisher v. Walters, 428 So.2d 431 (La.1983) as supportive of their position. In Fisher, a train was traveling above its own speed regulation in a rural area where there was no legal speed limit when it collided with a car stalled on the tracks. The evidence revealed that the railroad crew failed to maintain a proper lookout and operated the train without a functioning speedometer. In addition, there was evidence that the crew was following a policy of not braking or slowing freight trains at the first sight of a vehicle on the tracks to protect the life of persons stalled on the track. The evidence indicated the train was approximately 2,000 feet from the intersection when the car moved onto the track. Under all these circumstances, the trial court found the railroad company was negligent and the Supreme Court affirmed its decision, finding it was not clearly wrong. We find Fisher distinguishable on its facts from the present case.
La.R.S. 45:563[3], prior to its repeal, Acts 1982, No. 669 § 3, mandated that motorists stop at all railroad crossings. The law now provides in pertinent part that a driver shall stop "... within fifty feet but not less than fifteen feet from the nearest rail of such railroad ... when ... a railroad train approaching within approximately nine hundred feet of the highway crossing emits a signal in accordance with R.S. 32:168, and *1158 such railroad train, by reason of its speed or nearness to such crossing, is an immediate hazard." La.R.S. 32:171 A(3). The Thomas vehicle came into sight when the train was approximately 250 feet from the crossing. The train was only three seconds away when the car fouled the tracks. There is little or no dispute but that the engineer emitted a warning signal as required by La.R.S. 32:168.
Generally, a motorist must use his sense of sight and hearing for a possible oncoming train before traversing the crossing, and that even if his view is obstructed to such an extent as to prevent him from being able to see all the way down the track, then the law requires that he exercise a high degree of caution to ascertain that there is no train in the vicinity. Kavanaugh v. Travelers Insurance Co., 203 So.2d 780 (La.App. 2nd Cir.1967); Bertrand v. Missouri-Pacific Railroad Company, 160 So.2d 19 (La.App. 3rd Cir. 1964), writ ref. 245 La. 1075, 162 So.2d 571; Breaux v. Texas & Pacific Railroad Company, 176 So.2d 640 (La.App. 1st Cir.1965); Hymel v. Texas & New Orleans Railroad Company, 145 So.2d 138 at 140 (La.App. 4th Cir.1962). When a motorist's view of the railroad right-of-way is obstructed, he must exercise a higher degree of caution. Kavanaugh v. Travelers Ins. Co., supra: Hymel v. Texas & New Orleans Railroad, supra.
The record supports the jury's finding that Thomas placed himself in a position of peril by proceeding across the tracks, without ascertaining the safety of doing so and in disregard of the warning signal being given by the oncoming train. There was nothing unusual about the speed of the Thomas vehicle to indicate it would not stop. A train crew can assume that drivers will bring their vehicles to a stop unless the car's approach is so unusual as to place an ordinarily prudent man on notice that the automobile cannot be brought to a stop in time to avoid collision. Thibodeaux v. Carlock, 392 So.2d 1084 (La.App. 3rd Cir.1980); Bordenave v. Texas & N.O.R. Co., 46 So.2d 525 (La.App.Orl.1950).
By the time the engineer realized the driver's peril, there were no efforts to be taken which could have avoided the accident. Accord: Gibson v. Kansas City Southern Railroad Co., 233 So.2d 26 (La. App. 4th Cir.1970), writ denied 256 La. 254, 236 So.2d 31. Troxlair v. Illinois Central R. Co., 291 So.2d 797 (La.App. 4th Cir. 1974), writ denied 294 So.2d 834 (La. 1974); Scott v. Louisiana Midland Ry. Co., 204 So.2d 597 (La.App. 3rd Cir.1967), writ denied 251 La. 750, 206 So.2d 96 (1968); Carlin v. Illinois Central R. Co., 210 So.2d 95 (La.App. 1st Cir.1968), writ denied 252 La. 831, 214 So.2d 160 (1968).
Appellants contend that it is impossible, under the pure comparative negligence law of our state for the jury to have found the railroad totally free of fault. La.C.C. art. 2323. We disagree. Whether a fact-finder determines a party to be one percent at fault, totally at fault, or somewhere in between, we believe the manifest error rule applies. Accord: Triangle Trucking Co. v. Alexander, 451 So.2d 638 (La.App. 3rd Cir.1984), handed down this term; McKinley v. Bekins Moving & Storage Co., 449 So.2d 705 (La.App. 5th Cir. 1984); Varnado v. Continental Ins. Co., 446 So.2d 1343 (La.App. 1st Cir.1984). The fact finder's decision is to weigh the credibility of witnesses, resolve conflicts and inconsistencies in testimony and, absent a showing of manifest error, this court will not disturb that decision. Canter v. Koehring Co., 283 So.2d 716 (La.1973); Abraham v. Hanover Ins. Co., 420 So.2d 526 (La.App. 2nd Cir.1982); Sampy v. Roy Young, Inc., 425 So.2d 284 (La.App. 3rd Cir.1982). See also: Johnson, Comparative Negligence and the Duty Risk Analysis, 40 LA.L.REV. 319. We cannot say the triers of fact clearly wrong in their apportionment of fault for the accident.
Appellants also contend that the complex procedure of a bifurcated trial in a comparative negligence case prevented the jury from reaching a reasoned and just result. On the eve of the trial, the Beard and Mock plaintiffs settled with Mo-Pac, the only party requesting a jury trial. Thus, the case *1159 went to trial with a jury trial involving the Thomas plaintiffs' claim against Mo-Pac and a bench trial with all plaintiffs aligned against the State and the Thomas plaintiffs claims against the Henry defendants. In particular, appellants complain of the lack of any statutory guidance as to whether the jury should assign a percentage of fault to alleged tortfeasors not before the jury. The trial judge decided that he would allow the jury to assess the degree of the State's fault if he found liability existed per La.R.S. 13:5105. In accordance with this decision, the trial judge allowed the jury to hear only portions of the testimony against the State.
Appellants contend that the procedure employed deprived the jurors of critical testimony of key liability witnesses. However, our review of the record convinces us that if the jury was indeed deprived of any "critical evidence", it was because the plaintiffs either failed to call certain witnesses and/or they failed to solicit the testimony desired during their own examination of each witness. As aforementioned, the claim against the State was premised upon its ownership of a storage building which allegedly obstructed the view of both motorists and engineers. The trial judge found the building situated in the south-east quadrant of the intersection was not a contributing factor, rather, the accident was caused solely by Thomas' inattentiveness.
The appellant's own expert, Professor Andrew J. McPhate, testified that when the Thomas vehicle was 55 feet from the easternmost track, the driver of the vehicle could have seen at least 200 feet down the track and that at this point a vehicle traveling 15 miles per hour could have easily stopped at least 18 feet from this track. All of Professor McPhate's testimony indicates that when the motorist was 55 feet from the easternmost track, that if he would have been paying attention, he could have seen this train at a sufficient enough distance from the track to have stopped his vehicle at least 18 feet from the nearest track. Professor McPhate's calculations were based upon a prudent driver under similar circumstances in which the deceased found himself in, while driving 15 miles per hour. However, there was considerable testimony that Thomas was driving only 5 miles per hour, which would have allowed him to stop at a distance much further from the track than the 18 feet which Professor McPhate testified to.
Another expert, Mr. John Bentley, an engineer who was qualified to testify in the field of accident reconstruction, testified that at 55 feet from the track, the deceased could have seen at least 200 feet down the track. This testimony was corroborated by the testimony of Dr. Olin Dart, a professor of civil engineering at LSU School of Engineering in Baton Rouge, Louisiana. Dr. Dart was qualified as an expert in civil engineering and testified that on the night of the accident, if the deceased would have been traveling 15 miles per hour, he would have had sufficient time to see this train and could have stopped at 27.2 feet from the easternmost track. Dr. Dart also stated that according to his calculations and measurements, at 30 feet from the track, if Thomas had been going 10 miles per hour, he would have had unlimited sight distance and if he had looked to see the oncoming train, he could have stopped his vehicle 14 feet from the track. Dr. Dart ended his testimony by stating that if the deceased was traveling 5 miles per hour, as was testified to, when he was 30 feet from the track he would have had unlimited sight distance and could have stopped his vehicle at least 23 feet from the track.
Plaintiffs complain the jury was prevented from hearing testimony from brakeman Charles Buquoi regarding his knowledge of the building and its effect on visibility. However, Mr. Buquoi was questioned both in the absence of the jury and again in their presence. The same is true of the testimony of Mo-Pac fireman Charles Bennett. Both Buquoi and Bennett were of the belief that the building was not a factor in the accident. In each case, if the plaintiffs failed to elicit crucial testimony, it was due to their own failure.
*1160 The testimony of Messrs. McPhate, Bentley, Dart, Buquoi and Bennett, which indicated the accident was caused by the fault of Thomas and not the railroad, was corroborated by engineer Billy Adams who stated that upon noticing the vehicle, he could not have taken any action to stop the train sooner. Investigating Officer Rodney Feazell opined that there were no obstructions interfering with visibility. In fact, this was the only train-car accident at this intersection he was aware of.
Furthermore, Ms. Beard, the only survivor in the Thomas vehicle stated that the last thing she remembered before the collision was the conversation engaged in and the party's attention toward the automobile clock.
Next, appellants contend that the manifest error rule is inapplicable because of procedural errors, including erroneous charges given the jury. There is no dispute but that La.R.S. 45:563, supra at footnote 2, had been tacitly repealed by the passage of La.R.S. 32:171[4]. Watson v. Illinois Central Gulf R.R., 355 So.2d 1366 (La.App. 1st Cir.1978) writ ref. 357 So.2d 1168 (La.1978). The former statute required a motorist to stop at all railroad crossings whereas the subsequent legislation imposes a conditioned duty to stop. A reading of La.R.S. 32:171 A(3) & (4) indicates the Thomas vehicle was required to stop "... within fifty feet but not less than fifteen feet from the nearest rail ..." as the engineer was sounding his horn for a distance of about 1,500 feet prior to the intersection and the train was plainly visible when Thomas began to proceed across the well-lighted intersection. Furthermore, Thomas was obligated to stop under Alexandria City Ordinance 25-99 which parallels the language of La.R.S. 32:171 A(4). Hence, any error committed by the reading of La.R.S. 45:563 was harmless.
Considering the format of the verdict form presented the jury, they were never required to determine any negligence on the part of Thomas as the first question asked concerned whether Mo-Pac was at fault regarding the collision. That question was answered in the negative, thus there was no need to address the motorist's failure to stop. The jury had no reason to be influenced by the complained-of reference to La.R.S. 45:563. Accord; Williams v. Griffin, 422 So.2d 199 (La.App. 4th Cir. 1982), writ denied 423 So.2d 1182 (La.1982).
In addition to their objection to the reading of La.R.S. 45:563, appellants contend the trial court erred in reading the Alexandria City Ordinance Section 25-59 without mentioning that any fault on the part of Thomas depended upon all of the circumstances. Also, plaintiffs complain of the charges informing the jury of a motorist's duty to use his senses of sight and sound before crossing a railroad track and the engineer's right to assume that a vehicle *1161 approaching a crossing will stop in time to avoid a collision. Our review of the record convinces us that, overall, the instructions were pertinent and accurate. Adequate instructions are those which fairly and reasonably point out the issues presented by the pleadings and evidence and provide correct principles of the law for the jury's consideration. Miller v. Fogleman Truck Lines, Inc., 398 So.2d 634 (La.App. 3rd Cir.1981) writ denied, 401 So.2d 358 (La.1981); McElroy v. Vest, 407 So.2d 25 (La.App. 3rd Cir.1981) writ denied 412 So.2d 83 (La.1982). Even if errors are made in jury charges, appellate courts have a duty to review the facts in the record and affirm the verdict if consistent with the evidence. Andry v. Kinberger, 364 So.2d 613 (La.App. 4th Cir.1978). We find that the instructions adequately explained the law to the jury.
Plaintiffs have also appealed the judgment of the trial judge revoking, upon rehearing, his prior grant of a Motion for New Trial. In support thereof appellants contend the Written Reasons, issued on January 4, 1983, for the grant of plaintiffs request for a new trial against Mo-Pac served as a final judgment, thus the decision on rehearing was invalid for failure to comply with La.C.C.P. arts. 1951, 1971-1979.
La.C.C.P. art. 1918 provides that a final judgment shall be identified as such in appropriate language and, where written reasons for judgment are assigned, they shall be set out in an opinion separate from the judgment. The record discloses no such separate judgment, only written reasons as to why the trial judge believed the Motion for New Trial had merit. Furthermore, we agree with the decision of the trial judge, on rehearing, that the inclusion of La.R.S. 45:563 in jury instructions constituted harmless error, for reasons assigned hereinabove.
Where there are only written reasons assigned and no separate signed judgment, there is not a final judgment. Pearce v. Johnson, 250 So.2d 567 (La.App. 3rd Cir.1971). The assignment of reasons, dated January 4, 1983, was merely an interlocutory ruling in the absence of formal judgment. Prior to the signing of final judgment, a trial judge may, at his discretion, change the substance or result of interlocutory rulings. Bordelon v. Dauzat, 389 So.2d 820 (La.App. 3rd Cir.1980). In the present case, there was a contradictory hearing held on January 31, 1983, in response to a request for rehearing. Thereafter, the trial judge assigned reasons denying applicants a new trial and a judgment was signed accordingly. We find the trial court acted within its authority in setting aside the previous grant of a new trial upon appellee's request for a rehearing prior to the signing of final judgment.
Lastly, appellants contend that the trial judge erred in holding that fault of the driver barred recovery from the State on behalf of the passengers. However, for reasons set forth hereinabove, we cannot conclude the finders of fact were clearly wrong in finding the storage building neither presented an unreasonable risk of harm nor that the damage resulted from the location of the building. La.C.C. art. 2317.
For the reasons assigned hereinabove, the judgment appealed is affirmed at appellant's cost.
AFFIRMED.
NOTES
[1] Two other cases were consolidated: Florine Beard v. Missouri-Pacific Railroad Co., et al., 451 So.2d 1161, and Darrill Dewayne Mock, et al. v. Missouri-Pacific Railroad Co., et al., 451 So.2d 1162. These two cases are considered herein, but separate judgments are rendered.
[2] La.R.S. 13:5105 prohibited the jury from determining the liability of the State.
[3] LSA-R.S. 45:563 provided:

"No person shall drive or propel any automobile or other motor driven vehicle upon the intersection of a railroad track and a public highway or municipal street at grade crossing without first stopping at a distance of not less than ten feet nor more than fifty feet from the nearest track and looking for approaching trains.
"In the trial of all actions to recover personal injury or property damages sustained by any driver of such motor driven vehicle by collision of his vehicle and a train in which action it may appear that the driver violated this Section, the question of whether the violation was the sole or proximate cause of the accident and injury is for the jury to determine regardless of the penalizing feature of R.S. 45:564. That the violation of this Section shall not affect recovery for damages and the question of negligence or violation shall be left to the jury. Furthermore, the contributory negligence statutes of Louisiana shall apply in these cases as in other cases of negligence. "This Section shall not apply to automobiles or other motor driven vehicles of any municipality, when responding to fire alarm, or to the automobiles or other motor driven vehicles of the police department of any municipality when responding to an emergency call, or to motor driven ambulances when responding to an emergency call. Nor shall this Section apply where crossings are provided with a flagman, and the signal to proceed has been given by the flagman, or where gates are provided and the gates are open."
[4] § 171. Obedience to signal indicating approach to train

A. Whenever any person driving a motor vehicle approaches a railroad grade crossing under any of the circumstances stated in this Section, the driver of such vehicle shall stop within fifty feet but not less than fifteen feet from the nearest rail of such railroad, and shall not proceed until he can do so safely. The foregoing requirements shall apply when:
(1) A clearly visible electric or mechanical signal device gives warning of the immediate approach of a railroad train.
(2) A crossing gate is lowered or when a human flagman gives or continues to give a signal of the approach or passage of a railroad train.
(3) A railroad train approaching within approximately nine hundred feet of the highway crossing emits a signal in accordance with R.S. 32:168, and such railroad train, by reason of its speed or nearness to such crossing, is an immediate hazard.
(4) An approaching railroad train is plainly visible and is in hazardous proximity to such crossing.
B. No person shall stop a motor vehicle upon any railroad crossing.
C. No person shall drive any vehicle through, around, or under any crossing gate or barrier at a railroad crossing while such gate or barrier is closed or is being opened or closed when an approaching railroad train is plainly visible and is in hazardous proximity to such crossing.
D. No person shall drive any vehicle across any railroad crossing while the signal devices are flashing when an approaching railroad train is plainly visible and is in hazardous proximity to such crossing.
Amended by Acts 1982, No. 669, § 1.