STOKER, Judge.
This is an appeal from a judgment granting a Motion for Summary Judgment to Judicially Recognize and Enforce a Settlement Agreement. The issue arose in Civil Action No. 81-42577-G, entitled “Phil H. Nugent v. Hartford Accident & Indemnity Company, Yosemite Insurance Company, Industrial Fire & Casualty Company, David R. Livingston, and Development Resources of Louisiana, Inc.” Movers included plaintiff, Phil H. Nugent, and all defendants except the appellant, Yosemite Insurance Company (Yosemite). We reverse.
The facts are as follows. This suit arises out of yet another lawsuit in which plaintiff, Phil H. Nugent, and co-executive officers, Jack Merrill and James Vest, were cast in judgment. McElroy v. Vest, 407 So.2d 25 (La.App. 3d Cir.1981), writ denied, 412 So.2d 83 (La.1982). On February 11, 1981, Nugent filed the present suit, styled as an “Action For Declaratory Judgment On Insurance Policies, For Breach of Fiduciary Obligations, In Tort, And For Damages.” In his petition, Nugent alleged the existence of McElroy’s suit filed on February 24, 1976; primary coverage for the McElroy claim under a liability policy issued by Hartford Accident & Indemnity Company (Hartford) and excess coverage under a liability policy issued by Yosemite; Hartford’s position as workmen's compensation intervenor; McElroy’s pretrial offers to settle within the limits of the Hartford policy; Hartford’s failure to notify Nugent of same; notice of- the McElroy claim to Yosemite through Hartford on September 16, 1980; and a verdict in the amount of $890,461.66 in favor of McElroy rendered on September 19, 1980.
In the alternative, Nugent alleged that in the event it was found that Livingston and Commercial (now Development Resources of Louisiana, Inc. and referred to hereinafter as Development Resources) failed to report the McElroy claim to Yosemite and further that it was found that Livingston/Commercial were not agents of Yosemite, then Livingston and Commercial and Industrial Fire & Casualty Company (Industrial Fire), as the errors and omissions liability insurer of Livingston and Commercial, were liable for damages caused by the negligent handling of the McElroy claim.
After various exceptions, motions and discovery, plaintiff amended his petition on February 24, 1982, to further allege that the McElroy verdict had been affirmed on appeal; that on or about February 22, 1982, Hartford and Yosemite settled the McElroy claim with the contribution of Yosemite being conditioned under a reservation of rights; that Hartford and Yosemite had denied Nugent’s hold harmless or indemnification demand; that Yosemite advised it intended to bring an action against Nugent; and that Hartford and Yosemite were liable for the negligent handling of the McElroy claim, including attorney’s fees incurred by Nugent.
All defendants answered, denying the allegations pertinent to liability in the present suit.
The present motion was filed on September 23, 1983. In support of the motion, movers submitted the affidavit of W. Paul Hawley, counsel for Phil H. Nugent, and *625 four exhibits. These documents showed the following.
Nugent, Merrill and Vest each filed separate but essentially identical actions against Hartford, Yosemite and Industrial Fire in the Fifteenth Judicial District Court, Lafayette, Parish. In addition, Merrill filed a duplicate action in the Nineteenth Judicial District Court, Parish of East Baton Rouge.
On January 10, 1983, Hawley, as counsel for Nugent, sent a letter addressed to counsel for Yosemite and Hartford, stating as follows:
“Dear Becky and Gerald:
“It is with great, and I hope not premature, relief that I advise you that Mr. Vest and Mr. Merrill are willing to go along with the settlement in their cases. I attach hereto a rough draft of the proposed agreement, copies of which are being sent to all counsel. I await constructive criticism from everyone regarding the language. I would ask that the brick bats be hurled early so we can put this thing to bed.
Very truly yours,”
The above letter was accompanied by a three-page proposal (referred to hereinafter as “proposed settlement”) that included all claims in the three separate actions. In paragraph 5, the proposed settlement agreement contained a provision in which the three plaintiffs, Nugent, Merrill and Vest, agreed to dismiss each action against all defendants in return for defendants’ agreement not to make any kind of claim or demand against them. Paragraph 6 included a statement that it was the express purpose of the agreement to lay to rest all claims by or against Nugent, Merrill and Vest involving the defendants and, therefore, all plaintiffs released all defendants and all defendants released all plaintiffs. Paragraphs 7 and 8 provided as follows:
“7. Hartford, Yosemite, Industrial Fife, Livingston, and Development Resources specifically and expressly reserve all rights and causes of action as between themselves, Nugent, Merrill and Vest only being released by them; and
“8. Nugent, Merrill, and Vest respectively agree that he [sic] will not assign or subrogate his [sic] alleged rights herein to anyone.”
The document ended abruptly without more, except the word “signatures.”
Counsel for Yosemite responded to Haw-ley with a letter dated January 27, 1983, as follows:
“Dear Paul:
“This is in confirmation of our recent telephone conversation concerning the Agreement, which you forwarded by letter dated January 10, 1983. We have reviewed the document, and the language is agreeable to us. Robert will sign for Yosemite as its attorney of record.
“Thank you for your cooperation and assistance. With best regards, we remain
Very truly yours,”
On May 20,1983, Hawley sent a letter on behalf of Nugent addressed to all counsel in all cases, stating, in pertinent part, as follows:
“You will recall that everyone but Farley [counsel for Livingston, Development Resources, and Industrial Fire] had agreed to the language of the rough draft which I sent January 10, 1983. He wanted to get Industrial Fire, Livingston, and Development Resources completely out. Everyone agreed thereto but Becky [Counsel for Yosemite]. Accordingly, I have revised the draft to provide that Yosemite reserves its rights against Hartford and Industrial Fire, et al, and they do the same against Hartford. Hartford and Industrial Fire, et al, release each other.
Very truly yours,”
The above letter was accompanied by a three-page agreement (referred to hereafter as “revised settlement”) identical to the proposed settlement except for an omission in paragraph 6 and paragraphs 7, 8 and 9, which provided as follows:
*626 “7. Hartford further releases Industrial Fire, Livingston, and Development Resources from any further responsibility in connection with the matters stated above and Industrial Fire, Livingston, and Development Resources release Hartford from any responsibility in connection with the matters stated above;
“8. Yosemite specifically and expressly reserves all rights and causes of action against Hartford, Industrial Fire, Livingston, and Development Resources and Hartford, Industrial Fire, Livingston, and Development Resources specifically reserve all rights of action against Hartford [sic]; and
“9. Nugent, Merrill, and Vest respectfully agree that he [sic] will not assign or subrogate his [sic] alleged rights herein to anyone.”
The revised settlement included a signature space for all parties to the agreement but the copy of the revised settlement submitted in support of the motion was not signed by anyone. The affidavit submitted in support of the motion contained a statement that Yosemite refused to sign the revised settlement.
On July 6, 1983, counsel for Yosemite sent another letter to Hawley, stating as follows:
“Dear Paul:
“Recent contact with Yosemite and in-house counsel has uncovered a wrinkle with respect to dismissal of the pending action by Nugent, Merrill and Vest. Yosemite certainly was prejudiced by the later notice of the lawsuit and will seek recourse against Hartford, and perhaps Industrial Fire & Casualty Company, David R. Livingston and Development Resources of Louisiana, Inc., but not Nu-gent, Merrill or Vest. Yosemite has lost the most with respect to the McElroy matter, and in light of that, we pass along for your consideration the enclosed assignment. Obviously, the assignment is in conflict with number 9 of the Agreement, which you recently forwarded. If the Assignment upsets the negotiations and agreement with the other parties, we will take it upon ourselves to contact everyone and work out an agreement. We will also draft the necessary documents to finalize the matter and fully protect the interests of Nugent, Merrill and Vest. Please advise.
“With best regards, we remain
Very truly yours,”
At trial of the matter movers submitted a joint brief in which they urged the revised settlement should be enforced against Yosemite.
In written reasons, the trial court found that a compromise agreement had been reached at the time Yosemite responded to Hawley by letter of January 27, 1983. The court then reviewed the language of the proposed settlement and the revised settlement, which admittedly had been altered as it pertained to other defendants, and found Yosemite was not- prejudiced by the alterations and that its commitments were the same under either document. The court then took notice that all parties except Yosemite had joined in the motion for summary judgment and found it reasonable to conclude all parties had reached an agreement and compromise. Accordingly, Yosemite was directed to comply with the terms and conditions of the compromise.
Appellant Yosemite contends the trial court erred in finding there was an agreement within the meaning of Civil Code art. 3071, which provides as follows:
“A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.
“This contract must be either reduced into writing or recited in open court and capable of being transcribed from the record of the proceeding. The agreement recited in open court confers upon each of them the right of judicially enforcing its performance, although its substance may thereafter be written in a more convenient form.”
*627 In essence, Yosemite argues there was no agreement at any one time between all of the parties and, hence, no enforceable writing.
The affidavit and exhibits submitted by movers support Yosemite’s position. Haw-ley, as attorney for Nugent, circulated what he himself termed in the letter of January 10, 1983, a “proposed” agreement and invited comments and criticism on the language of the agreement. Yosemite’s attorney responded promptly and accepted the proposal. After Yosemite’s acceptance, however, the attorney for Industrial Fire, Livingston, and Development Resources rejected the proposal, demanding a release from all defendants, as well as the plaintiffs. All defendants agreed except Yosemite. Hawley’s letter of May 20, 1983, acknowledged the multi-party dispute as the reason the proposed settlement was revised.
Appellees do not contend that Yosemite ever assented to the second agreement in writing or otherwise; instead, they argue there was no change between the two settlement agreements insofar as Yosemite’s own obligations were concerned and, thus, Yosemite’s failure to assent to the revised settlement was immaterial. Appellees’ argument, however, assumes Yosemite intended to agree to the settlement, without regard to the agreement of the other defendants. This assumption is contrary to the language of the proposed settlement and the conduct of parties seeking to enforce the revised settlement.
Paragraph 6 of the proposed settlement stated that the express purpose of the compromise was to release the plaintiffs. Paragraph 7 expressly reserved all actions among the defendants, with the intent being again expressed that only the plaintiffs would be released. The Industrial Fire group chose to repudiate these provisions and used the settlement with Nugent, Merrill and Vest to bargain for dismissal from other defendants. These circumstances raise an issue of material fact concerning whether Yosemite intended to unconditionally release the three plaintiffs without improving its own position, unless all other defendants were also willing to do so.
Based on movers’ own evidence that the proposed agreement was rejected by other parties after Yosemite’s written acceptance and that Yosemite never agreed to the revised compromise, a valid contract of transaction or compromise was never confected among all of the parties to the agreement. If this type of contract is to have any validity, it must possess the essential elements of any type of contract, including that of an offer made and accepted by each party to the agreement. Horace Mann Insurance Company v. Casualty Reciprocal Exchange, 383 So.2d 1040 (La.App. 1st Cir.1980). Further, the agreement should set out obligations each party has to the other in specific and express terms. Bourgeois v. Franklin, 389 So.2d 358 (La.1980). Even if the circumstances reflected in the record on this motion for summary judgment do not raise a material issue of fact requiring denial of the motion, under the most favorable view of the facts movers are not entitled to a judgment as a matter of law. Chaisson v. Domingue, 372 So.2d 1225 (La.1979).
For the foregoing reasons the judgment of the trial court granting the joint motion for summary judgment is reversed and the case is remanded for further proceedings.
REVERSED AND REMANDED.