STOKER, Judge.
Yosemite Insurance Company appeals a summary judgment granted in favor of James Vest and four other defendants enforcing an alleged compromise agreement between the parties.
FACTS
This action springs from a suit brought by Larry McElroy against three executive officers of the company by which plaintiff was employed for damages he sustained in an on-the-job accident. James Vest was one of those officers. The judgment in favor of McElroy was affirmed on appeal and is now final. McElroy v. Vest, 407 So.2d 25 (La.App. 3d Cir.1981), writ denied, 412 So.2d 83 (La.1982).
Hartford Accident & Indemnity Company insured the liability of the officers for up to $300,000. Yosemite Insurance Company was the excess insurer for up to one million dollars. Including interest, the judgment exceeded those amounts. David R. Livingston, through his company (now called Development Resources of Louisiana, Inc.) issued the two policies. Industrial Fire & Casualty Company was Livingston’s errors and omissions insurer.
The three officers cast in judgment in McElroy’s suit each filed a separate suit against Hartford, Yosemite, Livingston, Development Resources, and Industrial Fire. Their allegations included the failure of Hartford to settle with McElroy within the policy limits, and the failure of Livingston to notify Yosemite timely, all resulting in substantial uninsured liability on the part of the three officers.
Negotiations toward a compromise were engaged in by the three officers and the five defendants. At some point, Yosemite expressed an intent to seek indemnity from various parties, which would violate the terms of drafts of an agreement already circulated. Phil Nugent, one of Vest’s fellow officers, filed a “Motion for Summary Judgment to Judicially Recognize and Enforce a Settlement Agreement” in his suit. This court reversed the trial court’s judgment granting a summary judgment in that case. Our opinion can be found at Nugent v. Hartford Acc. & Indem. Co., 467 So.2d 623 (La.App. 3d Cir.1985).
Vest, Hartford, Livingston, Development Resources and Industrial Fire filed a motion for summary judgment in Vest’s suit which was similar to that filed in Nugent’s action. By a judgment dated January 1, 1985, the trial judge granted the summary judgment, and ordered Yosemite to abide by the agreement. It is this ruling that is before us now.
An in-depth account of the negotiation process can be found in our opinion in Nugent. For our purposes in this case it is sufficient to recount that a proposed agreement was circulated among the eight interested parties in January 1983; Yosemite’s attorney signified her assent in writing; three other defendants rejected the terms; certain changes were made to accommodate the objections; and a second document was circulated, which was never signed by anyone. Vest and four of the defendants contend that Yosemite is bound by the second agreement because none of the changes affected Yosemite.
*879 We reject the movants’ arguments, and we adopt a portion of our Nugent opinion in this case:
“Appellees’ argument, however, assumes Yosemite intended to agree to the settlement, without regard to the agreement of the other defendants. This assumption is contrary to the language of the proposed settlement and the conduct of parties seeking to enforce the revised settlement.
“Paragraph 6 of the proposed settlement stated that the express purpose of the compromise was to release the plaintiffs. Paragraph 7 expressly reserved all actions among the defendants, with the intent being again expressed that only the plaintiffs would be released. The Industrial Fire group chose to repudiate these provisions and used the settlement with Nugent, Merrill and Vest to bargain for dismissal from other defendants. These circumstances raise an issue of material fact concerning whether Yosemite intended to unconditionally release the three plaintiffs without improving its own position, unless all other defendants were also willing to do so.
“Based on movers’ own evidence that the proposed agreement was rejected by other parties after Yosemite’s written acceptance and that Yosemite never agreed to the revised compromise, a valid contract of transaction or compromise was never confected among all of the parties to the agreement. If this type of contract is to have any validity, it must possess the essential elements of any type of contract, including that of an offer made and accepted by each party to the agreement. Horace Mann Insurance Company v. Casualty Reciprocal Exchange, 383 So.2d 1040 (La.App. 1st Cir.1980). Further, the agreement should set out obligations each party has to the other in specific and express terms. Bourgeois v. Franklin, 389 So.2d 358 (La.1980). Even if the circumstances reflected in the record on this motion for summary judgment do not raise a material issue of fact requiring denial of the motion, under the most favorable view of the facts movers are not entitled to a judgment as a matter of law. Chaisson v. Domingue, 372 So.2d 1225 (La.1979).” 467 So.2d at 627.
Additionally, we note that LSA-C.C. art. 3071 requires that a valid transaction or compromise must be in writing. While two drafts of the agreement were circulated to all the parties involved, neither was ever signed by anyone. The Supreme Court stated in Felder v. Georgia Pac. Corp., 405 So.2d 521 (La.1981), that:
“the requirement that the agreement be in writing and signed by both parties does not necessarily mean that the agreement must be contained in one document. It would suffice that there be a written offer signed by the offerer and a written acceptance signed by the acceptor, even if the offer and the acceptance are contained in separate writings. In other words, where two instruments, when read together, outline the obligations each party has to the other and evidence each party’s acquiescence in the agreement, a written compromise agreement, as contemplated by La.C.C. art. 3071, has been perfected.” 405 So.2d at 523-24.
The record in this suit is devoid of any writing on the part of James Vest which could be construed as an offer. The attorney for Phil Nugent generated the proposed compromise settlement drafts and all the correspondence in evidence concerning the compromise. In his letter of January 10, 1983, he wrote that “Mr. Vest and Mr. Merrill are willing to go along with the settlement in their cases.” Vest was not bound by this statement; his attorney of record did not sign any of the correspondence or documents. As far as James Vest is concerned, we do not believe the requirements of LSA-C.C. art. 3071 and of Felder were met.
For the foregoing reasons the judgment of the trial court granting the joint motion for summary judgment is reversed and the case is remanded for further proceedings.
REVERSED AND REMANDED.