355 So.2d 1366 (1978)
Clyde WATSON et ux.
v.
ILLINOIS CENTRAL GULF RAILROAD, State of Louisiana through the Department of Highways, Gulf States Utilities Company, W. D. Petty, Sr., J. C. Massey, and G. Richards.
No. 11825.
Court of Appeal of Louisiana, First Circuit.
February 13, 1978.
Writ Refused May 5, 1978.
*1367 Paul Due, Baton Rouge, for plaintiff.
Boris Navratil, Baton Rouge, for defendant.
Wm. Whatley, Baton Rouge, for Dept. of Hwys.
Before LOTTINGER, EDWARDS and PONDER, JJ.
LOTTINGER, Judge.
This is a suit by Clyde Watson and wife for the death of their minor daughter, Brenda, as a result of an automobile-train collision. Plaintiffs sued Illinois Central Gulf Railroad Company, (I.C.G.R.), W. D. Petty, Sr. (engineer), James C. Massey (apprentice *1368 engineer), Thomas G. Richards (brakeman), Gulf States Utilities (G.S.U.), and the State of Louisiana through the Department of Highways (Highway Department). The Trial Judge held I.C.G.R. and James Massey liable in solido for the damages sustained by the plaintiffs, but found in favor of the remaining defendants. I.C.G.R. and Massey have appealed that portion of the decision holding them liable, and the plaintiffs have appealed the portion of the decision in favor of the defendants G.S.U. and the Highway Department.
The record points out that on the morning of October 23, 1972, the deceased was proceeding in a southeasterly direction along La. 1026 (Lockhart Road), and the train was approaching from an easterly direction towards the Lockhart Crossing. Lockhart Road and the railroad tracks intersect at an angle of approximately 45 degrees, however, since the deceased was traveling southeast and the train was approaching from the east, they were meeting frontally. I.C.G.R. owns a 50 foot right of way on either side of the center line of the railroad tracks, with G.S.U. owning a 50 foot servitude parallel and adjacent to the northern side of the I.C.G.R. right of way, and the Highway Department maintaining an 80 foot right of way intersecting with the I.C.G.R. right of way.
The location of the crossing is not in an incorporated municipality, but the area is relatively populated. Though the crossing lacked electrical control lights, bells, crossarm devices, or a stop sign, it was marked by a railroad "crossbuck" sign, a yellow disc indicating a crossing, and a white painted mark on the highway surface.
At approximately 8:30 A.M. the automobile and the train collided as the deceased attempted to traverse the tracks. The causation of this collision as found by the Trial Judge was the failure of I.C.G.R. to maintain an unobstructed intersection and the failure of James Massey to sound the train warning signals beginning at a statutory distance of 900 feet from the crossing.
On appeal, defendants I.C.G.R. and Massey contend that the Trial Judge erred (1) in finding that warning signals were not given by the train crew until the train was 400 feet from the crossing and alternatively in concluding that failure to give signals before the train came to within 400 feet from the crossing was a proximate cause of the accident; (2) in concluding that the crossing at which the accident occurred was dangerously obscured and constituted a dangerous trap; (3) in finding that decedent was not obliged to stop at the crossing and look for approaching trains; (4) in concluding that LSA-R.S. 45:563 has been impliedly repealed by LSA-R.S. 32:171; (5) in holding that LSA-R.S. 45:324 and 841 were applicable in this case or that LSA-R.S. 48:382 imposed on the railroad, rather than the Highway Department, the obligation to maintain the crossing; and (6) in holding that the decedent's parents could recover damages for her death despite any contributory negligence on her part.
Plaintiffs in appealing contend that the Trial Judge erred in failing to find liability on the part of the defendants Gulf States Utilities and the Highway Department. This specification of error will be concurrently discussed in defendants' error number 5.

ERROR NO. 1
The duty of the railroad company operating in the state of Louisiana is to sound a warning whistle or bell not less than 300 yards from a crossing. LSA-R.S. 45:561. Failure to make an audible signal meeting statutory requirements is negligence per se. Bertrand v. Missouri Pacific Railroad Co., 160 So.2d 19 (La.App. 3rd Cir. 1964), writ refused, 245 La. 1075, 162 So.2d 571 (1964). In the Trial Judge's written reasons for judgment he reviewed the testimony of all the witnesses as to the giving of the proper signal at the required distance and relied on the testimony of one of the members of the train crew as to the distance being 400 feet at the time of the commencement of the warning signals.
*1369 Although the testimony of the engineer conflicts with the other members of the train crew it is the Trial Judge's function to weigh the credibility of these witnesses and absent a showing of manifest error, his decision as to the reliability of the witnesses and the weight to be given to their testimony will not be reversed. Canter v. Koehring Company, 283 So.2d 716 (La.1973). We find no error in the Trial Judge's finding that the train failed to give the proper signal within the statutorily required distance.
It is clear that the requirement under LSA-R.S. 45:561 is designed to protect motorists who are traversing train crossings. Miss Watson was the intended beneficiary of the warning signal and thus the failure to give that signal is a proximate cause of the accident. The finding by the Trial Judge that the duty was owed to Miss Watson and that I.C.G.R. and James Massey breached this duty is conclusively established in the record, and thus we find no error.

ERROR NO. 2
It is the finding of the Trial Judge that the failure of the railroad company to keep the northeast quadrant clear of trees and other vegetation obscuring the approaching motorist's visibility of an oncoming train "rendered the crossing unsafe for ordinary and reasonable use and was a proximate cause of the accident." After a careful review of the record including the state police report of the incident, this Court can only formulate the same conclusion that the trees and bushes in that quadrant sufficiently obscured the motorist's view of approaching trains, rendering the crossing unsafe.

ERROR NO. 3 & 4
Defendants-appellants argue that the deceased was contributorily negligent in failing to stop at the crossing in violation of LSA-R.S. 45:563.[1]
It is well settled that he who pleads contributory negligence must prove by a preponderance of the evidence that the injured party failed to act as a reasonable and prudent man and that his negligent conduct was a contributing cause of the accident. There is of course the presumption that the deceased acted in response to the natural instincts of self preservation and would not seek to commit suicide by exposing himself to unnecessary risks of death.
The Trial Judge concluded that LSA-R.S. 45:563 had been superceded by LSA-R.S. *1370 32:171[2] and 172[3] LSA-R.S. 45:563 was originally enacted as Act 12 of 1924, whereas, LSA-R.S. 32:171 and 172 were enacted as Act 310 of 1962. In Louisiana Civil Service League v. Forbes, 258 La. 390, 246 So.2d 800, 809 (1971) Mr. Justice Hamlin said:
"It is a well established rule of statutory construction that the Legislature is presumed to have enacted a statute in the light of preceding statutes involving the same subject matter and decisions construing such statutes, and, where the new statute is worded differently from the preceding statute, the Legislature is presumed to have intended to change the law."
Therefore, when LSA-R.S. 45:563 mandates that vehicles stop at railroad crossings and the legislature later enacts LSA-R.S. 32:171 and 172 which particularize the conditions under which a vehicle must stop at railroad crossings, we must conclude as did the Trial Judge that the latest expression of the legislature, LSA-R.S. 32:171 and 172, controls.
Therefore, considering that the Trial Judge found that the decedent's view of the approaching train was impaired by trees and vegetation; that Ms. Watson was only traveling approximately 25 to 30 miles per hour; that the train crew first saw her vehicle when the train was only 60 to 75 feet from the intersection, thus indicating that Ms. Watson would have first seen the train at the same time; that she momentarily applied her brakes, thus indicating that she apparently started to stop, but realizing the impossibility of stopping, attempted to beat the train across the intersection, we must conclude as did the Trial Judge that she was not contributorily negligent.

ERROR NO. 5
The Trial Judge in considering whether the sole duty to maintain an unobstructed view of Lockhart Crossing fell upon I.C.G.R. found:
"LSA-R.S. 48:382 to be an exception to the statutory and non-statutory duty to maintain safe and convenient crossings with highways, and as such, it should not be construed so as to relieve the railroad of the responsibility to keep the crossing clear of dangerous obstructions which are in the crossing but not within the Highway Department right of way, nor should it be construed to make the Highway Department an additional obligor in this respect. Had the obstruction been within both the crossing and the Highway Department right of way, there is a question of whether the Highway Department alone or both I.C.G.R. and the Highway Department together would have been responsible for clearing the dangerous obstruction. This question, however, is not before the Court, and the Court finds the Highway Department free of any fault.

*1371 "The Court does not feel that R.S. 48:382 extends the obligation to the area beyond the facility last constructed and the right of way on which it was constructed. It appears from the testimony that the trees and vegetation at the crossing which blocked the motorists' visibility was not on the Highway Department right of way. The Court is not convinced that the Highway Department should be held responsible for obstruction not even on its right of way although within the `crossing'."
We find no error in the Trial Judge's holding that the Highway Department is not liable to the deceased, they having no duty to maintain an area beyond their right of way. As to the defendant G.S.U., we find no liability incurred in that their servitude did not place a duty upon them to maintain I.C.G.R.'s right of way clear of trees or underbrush, nor was it obligated anymore than a landowner to clear brush and trees from its own right of way.

ERROR NO. 6
Based on the holding that there is no error as to the finding that the deceased was not contributorily negligent, we find no need to discuss this specification of error.
Therefore for the above and foregoing reasons the judgment of the Trial Court is affirmed; defendants-appellants, to pay all costs.
AFFIRMED.
NOTES
[1] LSA-R.S. 45:563 provides:

"No person shall drive or propel any automobile or other motor driven vehicle upon the intersection of a railroad track and a public highway or municipal street at grade crossing without first stopping at a distance of not less than ten feet nor more than fifty feet from the nearest track and looking for approaching trains.
"In the trial of all actions to recover personal injury or property damages sustained by any driver of such motor driven vehicle by collision of his vehicle and a train in which action it may appear that the driver violated this Section, the question of whether the violation was the sole or proximate cause of the accident and injury is for the jury to determine regardless of the penalizing feature of R.S. 45:564. That the violation of this Section shall not affect recovery for damages and the question of negligence or violation shall be left to the jury. Furthermore, the contributory negligence statutes of Louisiana shall apply in these cases as in other cases of negligence.
"This Section shall not apply to automobiles or other motor driven vehicles of any municipality, when responding to fire alarm, or to the automobiles or other motor driven vehicles of the police department of any municipality when responding to an emergency call, or to motor driven ambulances when responding to an emergency call. Nor shall this Section apply where crossings are provided with a flagman, and the signal to proceed has been given by the flagman, or where gates are provided and the gates are open."
[2] LSA-R.S. 32:171 provides:

"A. Whenever any person driving a motor vehicle approaches a railroad grade crossing under any of the circumstances stated in this Section, the driver of such vehicle shall stop within fifty feet but not less than fifteen feet from the nearest rail of such railroad, and shall not proceed until he can do so safely. The foregoing requirements shall apply when:
"(1) A clearly visible electric or mechanical signal device gives warning of the immediate approach of a railroad train;
"(2) A crossing gate is lowered or when a human flagman gives or continues to give a signal of the approach or passage of a railroad train;
"(3) A railroad train approaching within approximately nine hundred feet of the highway crossing emits a signal in accordance with R.S. 45:561, and such railroad train, by reason of its speed or nearness to such crossing, is an immediate hazard;
"(4) An approaching railroad train is plainly visible and is in hazardous proximity to such crossing.
"B. No person shall drive any vehicle through, around or under any crossing gate or barrier at a railroad crossing while such gate or barrier is closed or is being opened or closed."
[3] LSA-R.S. 32:172 provides:

"The department may designate particularly dangerous highway grade crossings of railroads and erect stop signs thereat. When such stop signs are erected, the driver of any vehicle shall stop within fifty feet, but not less than fifteen feet, from the nearest rail of such railroad and shall proceed only upon exercising due care."