466 So.2d 1280 (1985)
Gladys Brown THOMAS, Irma Thomas Hayes, Barbara Thomas Adams, Wanda Thomas Sims, and Carolyn Thomas Mc Cray
v.
MISSOURI PACIFIC RAILROAD COMPANY, and State of Louisiana, Through the Department of Transportation and Development.
Darill Dewayne MOCK, Darren Dewayne Mock, Felicia Everett Ward, and Michele Ward
v.
MISSOURI PACIFIC RAILROAD COMPANY, and State of Louisiana Through the Department of Transportation and Development.
Florine BEARD
v.
Billy R. ADAMS, Missouri Pacific Railroad Company, the Unopened Succession and Estate of Herman Thomas, MFA Insurance Company and the State of Louisiana.
No. 84-C-1131.
Supreme Court of Louisiana.
April 1, 1985.
Rehearings Denied May 2, 1985.
*1282 David W. Robertson, Alexandria, Charles F. Wagner, Pineville, C. James Hicks, Helen Ginger Roberts, Gravel & Brady, Alexandria, for plaintiffs-applicants.
LeDoux R. Provosty, Jr., Ronald J. Fiorenza, Provosty, Sadler & deLaunay, Alexandria, Marshall W. Wroten, Robert J. Jones, Warren D. Ponder, James C. Russell, Jr., Baton Rouge, DOTD-Office of Highways; for defendants-respondents.
CALOGERO, Justice.
We granted writs in this tort case arising out of a car-train collision to examine a jury verdict exonerating the Missouri Pacific Railroad Company and a judgment of the trial judge exonerating the State of Louisiana. For the reasons expressed hereinafter, we affirm the judgment exonerating the State but reverse the judgment in favor of the railroad to allow the Thomas plaintiffs partial recovery.
The facts giving rise to this litigation, as found by the Court of Appeal, are as follows:
At approximately 10:00 P.M. on June 24, 1981, Herman Thomas was driving a 1975 Cadillac on Sugarhouse Road in Alexandria, Louisiana. Thomas, accompanied by two women, Sandra Mock and Florine Beard, en route to dinner at a nearby restaurant, had the car windows up, the air conditioner on, and the tape player was playing gospel music. As the Thomas vehicle approached the railroad crossing, a Missouri-Pacific train was coming down the track from his left at approximately 35 m.p.h. At the same time, two boys on bicycles passed across the railroad tracks whereupon the engineer, Billy Adams, began blowing his whistle. As the boys cleared the crossing, the Thompson vehicle came into view when the train was approximately 250 feet away. The engineer testified he had no reason to believe the car would not stop as he continued to blow the whistle, however, when the car passed the cross-arms at a slow rate of speed, the engineer put the train into emergency. The automobile was struck by the freight train and carried 1,500 feet down the track, killing the driver and Mock passenger and seriously injuring the Beard passenger.
Located at the southeast quadrant of the intersection, i.e., on the motorist's left and the trainmen's right as each approached the crossingthere is located a windowless metal storage building, 90 feet long by 24 feet wide. This building was owned by the State of Louisiana. Its position somewhat impaired the view of west-bound motorists and north-bound trains of each other.
The railroad's rules call for a maximum speed of 20 m.p.h. at the location in question, however, it appears the train was proceeding at a speed of approximately 35 m.p.h.

*1283 The driver of the automobile, Herman Thomas, and the rear-seat passenger, Sandra Mock, were killed. The front-seat passenger, Florine Beard, was severely injured.
Heirs of Herman Thomas, the driver, sought relief from Missouri Pacific (Mo-Pac), and also from the State of Louisiana, owner of a building which was near the crossing and partially obstructed the view of the drivers of both train and car.[1] Florine Beard, the surviving passenger, and heirs of Sandra Mock, the deceased passenger, both sought relief from the State.[2] These passenger claimants settled with the railroad, as well as with the driver's liability insurer, prior to trial.
Suit was tried simultaneously to the jury (Thomas' heirs v. the Railroad) and to the judge (all plaintiffs v. the State of Louisiana).[3] The jury found in favor of the railroad and the Thomas suit was thus dismissed. The judge ruled in favor of the State against all plaintiffs. All plaintiffs appealed. The Court of Appeal affirmed. 451 So.2d 1152 (La.App. 3rd Cir.1984) (Thomas); id. at 1161 (Beard); id. at 1162 (Mock).
In this Court, plaintiffs assert the following assignments of error: 1) An erroneous jury charge was not harmless error. 2) The Railroad's violation of its own speed limit did establish negligence, contrary to the findings below. 3) The State was not free from fault under La.C.C. art. 2317. 4) The trial judge impermissibly withdrew a post trial judgment granting plaintiff a new trial.

ASSIGNMENT OF ERROR NO. 1
The Thomas plaintiffs contend that whether the driver was negligent is a question of fact, which was wrongly decided by the jury because they had been erroneously instructed.
The trial judge gave conflicting charges on the law concerning the obligation of a motorist to stop at a railroad crossing.[4] He read to them R.S. 45:563[5], a statute which had been tacitly repealed by the passage of R.S. 32:171, enacted as Act 310 of 1962. See Watson v. Illinois Central Gulf Railroad, 355 So.2d 1366 (La.App. 1st Cir. 1978). R.S. 45:563 has since been formally repealed by Act 669 § 3 of 1982. This statute puts an absolute duty on the driver *1284 to stop at all crossings. The judge also read to them R.S. 32:171(A), the statute in effect at the time of the accident, which puts a qualified duty upon a motorist to stop at a grade crossing.[6]
The jury by an eleven to one vote returned a verdict in favor of the railroad. The questions posed to the jury by interrogatories were 1) was the RR at fault 2) if so, was the RR fault a proximate cause of the accident 3) was the motorist at fault, and if so, was it a proximate cause 4) was the state at fault, and if so, was it a proximate cause. The jury merely answered "no" to question number one (the railroad was not at fault).
The defendants suggest that the erroneous instruction on the car driver's duty probably did not improperly influence the jury because the correct charge was also given. That suggestion is much too tenuous. There is a greater likelihood that this erroneous instruction did improperly influence the jury, than that it did not.
Defendant also suggests that the erroneous instruction did not likely affect the jury's verdict, for the driver's negligence was not addressed by the jury in the interrogatory answers. The jury simply answered no other question after finding the railroad not negligent.
In the weighing of car driver, railroad engineer and state fault, causation and contributory negligence, all of which were explored throughout trial, referred to in the judge's charge to the jury, and weighed by the jury before they answered any of the interrogatories, it is impossible to conclude that the jury in determining that the railroad was free of fault, was not improperly influenced by consideration of Thomas' fault in light of the judge's erroneous charge that Thomas had an absolute duty to stop at the crossing.
When the jury is given incorrect instructions on the law no weight should be accorded the judgment of a trial court and the verdict is not entitled to a presumption of regularity. See Otto v. State Farm Mutual Auto Ins. Co., 455 So.2d 1175 (La. 1984); Ragas v. Argonaut Southwest Ins. Co., 388 So.2d 707 (La.1980); Gonzales v. Xerox Corp., 320 So.2d 163 (La.1975); Hebert v. Gulf States Utilities Co., 426 So.2d 111 (La.1983).
As stated by this Court in Hebert, supra at p. 118, "we give less credence to the outcome in the district court because the jury charges given probably contributed to the result favorable to the defense." Those instructions erroneously placed a duty on plaintiff, which, as is evident from this opinion, was relevant to the jury's proper consideration of the fault as between the railroad and the deceased Herman Thomas.
When an appellate court has all the facts before it, a trial judge's erroneous instruction to the jury does not warrant a remand. See Gonzales v. Xerox, 320 So.2d 163 (La.1975) and cases cited therein. Accordingly, we will decide the case based on the record before us.

ASSIGNMENT OF ERROR NO. 2
We turn next to the question concerning whether MoPac is liable in tort for all or part of the damages sustained by Thomas and his heirs. In that regard a significant consideration is whether the train's violation *1285 of its own speed regulation is negligence and a contributing cause of the accident. As indicated earlier in this opinion, the City of Alexandria ordinance imposed a speed limit of 45 m.p.h. at Sugarhouse Road where it intersected the railroad tracks. On the other hand, the railroad required a speed limit of 20 m.p.h. at this crossing, which was coincidentally located within their own yard although at its southern extremity.
The duty risk analysis as contained in Dixie Drive It Yourself Systems v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962); Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (1972); Jones v. Robbins, 289 So.2d 104 (La.1974); and LeBlanc v. State, 419 So.2d 853 (La. 1982), is applicable in determining whether MoPac is liable to the Thomas plaintiffs.
To establish a defendant's liability and recover tort damages, the plaintiff must be able to answer affirmatively the following questions: 1) did defendant's conduct contribute to the victim's injury or is the defendant a cause of plaintiff's harm (the causal relation issue)? 2) was the victim protected under a general rule or principle of law against the defendant's conduct with respect to the injury inflicted on him (the duty issue)? 3) did defendant violate a duty with respect to the victim i.e., did the defendant act unreasonably (the negligence issue)? 4) have the plaintiffs sustained damages, and what is the extent thereof? Green, The Casual Relation Issue in Negligence Law, 60 Mich.L.Rev. 543, at 546 (1962).

The Casual Relation Issue
Conduct is a cause in fact of harm to another if it was a substantial factor in bringing about that harm.[7] Was the train's traveling at 35 m.p.h. a substantial factor in causing plaintiffs' harm? Did it contribute to that harm? Was it a cause thereof?
MoPac contends that the train's speed in excess of the company imposed limits was not a cause in fact of the accident; rather, that the negligence of Herman Thomas was the sole cause. They contend that there is no evidence to prove that Thomas would have benefited from any margin of safety which might have been created by a reduction in the speed of the train from 35 to 20 m.p.h.[8]
The causal connection between the excessive speed of a train and an accident is normally not that the train, if operated at the required slower speed, could have stopped in time to avoid the accident. The causal connection is that the motorist might well have had more time to hear and observe the train and stop his vehicle in time to avoid a railroad crossing accident, but for the train's excessive speed. Broussard v. Louisiana Western R. Co., 140 La. 517, 73 So. 606 (1916). Jenkins v. St. Paul Fire and Marine, 393 So.2d 851, 856 (La. App.2d Cir.1981), aff. 422 So.2d 1109 (La. 1982); Ward v. La. & Ark.Ry. Co., 451 So.2d 597 (La.App.2d Cir.1984).
At the time of the accident the train was travelling at almost twice the RR's self imposed speed restriction (35 m.p.h. rather than 20 m.p.h.). The experts at trial testified that if the train had been travelling within the imposed speed limit it would have afforded Thomas approximately three additional seconds to perceive the danger and react to its presence. Those three added seconds would have greatly increased the margin of safety and reduced the risk of harm.
The excessive speed of the train was a cause in fact of the accident.

The Duty Issue
Next we examine whether the defendant owed the victim a legal duty, and whether this duty included avoidance of the particular risk of injury to which the victim was exposed. Hill v. Lundin, supra; Jones v. Robbins, supra; Pierre v. Allstate Insurance *1286 Co., 257 La. 471, 242 So.2d 821 (1970). This is a dual inquiry. We must first determine whether there is some regulation or general principle of law governing defendant's conduct. Then we must determine whether this regulation or law imposing a duty was meant to protect this plaintiff, from this harm, arising in this manner. In this connection we must first determine if the defendant's engineer owed Thomas a duty not to exceed the company imposed 20 m.p.h. speed limit.
It has been held that operating a train in excess of company imposed speed regulations adopted in the interest of safety, constitutes negligence. Perkins v. Texas and New Orleans Railroad Company, 243 La. 829, 147 So.2d 646 (1962); Broussard v. Louisiana Western R. Co., supra; Fisher v. Walters, 428 So.2d 431 (La.1983). The jurisprudence is clear that there is a duty to operate a train at or below the company imposed speed limit.
The second part of the question is whether this duty not to exceed company imposed speed regulations encompassed the risk of an auto/train intersectional collision and the resulting injury to or death of the vehicle driver.
Defendant MoPac's position is that the risk that an automobile driver or passenger would be injured at the intersection of Sugarhouse Road and the railroad tracks was not included within the duty to operate within the company imposed 20 m.p.h. speed limit; rather, that only the risk of damages and injury to railroad property and/or personnel was encompassed within the duty to travel at 20 m.p.h..
This position is contrary to cases which hold that the risk of being injured as an occupant of a motor vehicle involved in a RR crossing accident is a risk that the duty to comply with company imposed train speed regulations was intended to protect against. See Ward v. La. & Ark. Ry., Co., 451 So.2d 597 (La.App. 2nd Cir.1984) and cases cited therein. Pertinently, Michael Detheridge, the Assistant General Superintendent of Rules and Safety for the railroad, who is responsible for implementing corporate safety policy testified at trial that the speed limit for trains in the yard was a safety measure to protect the general public as well as railroad equipment and employees.
There is a duty upon the defendant not to run its trains at a speed which will endanger the lives of those who make use of the streets of the city. What is excessive speed must be determined by a consideration of the hazardous conditions existing at the crossing where the accident occurred. Martin v. Yazoo & M.R. Co., 181 So. 571 (La.App.2d Cir.1938); Natal v. La. & A. Ry. Co., 18 La.App. 50, 137 So. 600 (Orl.1931). The railroad's own speed regulation is evidence of the maximum safe speed in the area. Perkins v. Texas & New Orleans Railroad Co., supra; Broussard v. Louisiana Western R. Co., supra; Fisher v. Walters, supra.
Billy Adams, the train's engineer, testified that this crossing was used frequently. Because of traffic in the area, the intersection was a dangerous one. The company imposed speed limit avoids multiple risks not the least of which is a collision involving a motorist crossing the intersection.
The defendant, MoPac, breached the legal duty which was designed to protect against the risk of harm which Thomas encountered.

The Negligence Issue
Our third inquiry is whether the defendant violated a duty which it owed, i.e., did the defendant act unreasonably. Was the engineer negligent? There is no question but that he was operating the train approaching the intersection of Sugarhouse Road and the railroad tracks at 35 m.p.h.[9] in violation of a company regulation requiring a speed not in excess of 20 m.p.h. Violations of speed regulations constitute negligence. The train's engineer was negligent.

*1287 The Damage Issue
Herman Thomas was also negligent in the operation of his car. He breached his duty to proceed cautiously across the railroad tracks at the intersection. Had he proceeded carefully he would have been aware of the train, and would likely have stopped at the crossing. His negligence was a substantial factor in causing the accident.
Since the amendment to La.C.C. art. 2323 by Acts 1979, No. 431, § 1, effective August 1, 1980, contributory negligence is no longer a bar to plaintiff's recovery. Rather comparative fault applies and a contributorily negligent claimant's damages are reduced in proportion to the degree or percentage of negligence attributable to him.[10]
We must determine the respective degrees of fault of each of the parties. We conclude on these facts that plaintiff was more at fault than the railroad. We therefore assess the percentages of fault at two-thirds for Thomas, one-third for the railroad. Because the Court of Appeal and the trial court exonerated the railroad and dismissed plaintiffs' lawsuit with prejudice they have not heretofore had to assess damages. For this reason we deem it preferable to return the case to the Court of Appeal to make that assessment of damages.

ASSIGNMENT OF ERROR NO. 3
All plaintiffs contend the trial and appellate courts erred in finding that the state was free from liability under La. C.C. art. 2317.[11] In order to come within the purview of the statute imposing strict liability on the custodian of a building, the plaintiff must prove that the building or its appurtenances posed an unreasonable risk of injury to others and that this damage occurred because of this risk of harm. Upon proof of these elements, the owner is responsible for the damage, unless he proves that the damage was caused by the fault of the victim, by the fault of a third person or by an irresistible force. The owner is absolved from his strict liability neither by his ignorance of the condition of the building, nor by circumstances that the defect could not easily be detected. Loescher v. Parr, 324 So.2d 441 (La. 1976); Olsen v. Shell Oil Co., 365 So.2d 1285 (La.1979); Entrevia v. Hood, 427 So.2d 1146 (La.1983).
It is incumbent upon plaintiffs to prove that the injuries were caused by a quality of the building which posed an unreasonable risk of harm. Entrevia v. Hood, supra at p. 1149. Plaintiffs have failed in this burden. We agree with the trial judge's conclusion that the State's building[12] did not constitute an unreasonable hazard or present an unusual risk of injury to others.
Charles Buguoi, the MoPac brakeman and Charles Bennett, the fireman, both testified at trial that the building was not a factor in the accident. Bennett even testified that he saw the car at least 100 feet before it reached the track. The investigating police officer, Rodney Feazell testified *1288 there were no obstructions interfering with visibility.
The plaintiffs' own expert, Andrew McPhate testified that when the car was 55 feet from the easternmost track, the driver of the vehicle could have seen at least 200 feet down the track. Another expert, John Bentley, corroborated this testimony. A third expert, Dr. Olin Dart, testified that at 30 feet from the track, the driver would have had unlimited sight distance.
Plaintiff presented no evidence to show that this building posed an unreasonable risk of harm to others. All parties agreed that had Thomas looked when he was at least 30 feet from the track that he would have had an unlimited view down the tracks. Given the slow rate of speed Thomas was travelling, these 30 feet afforded him ample opportunity to stop before traversing the tracks. Therefore, the location of the building abutting the tracks did not pose an unreasonably dangerous risk of harm to motorists attempting to traverse the tracks.

ASSIGNMENT OF ERROR NO. 4
Following the jury's verdict dismissing the Thomas plaintiffs' suit, the Thomas plaintiffs moved for a new trial against MoPac. On Jan. 4, 1983, because of an acknowledged error in the jury charge (to which reference is made hereinabove in our discussion of Assignment of Error No. 1), the trial judge granted that motion for a new trial. The instrument by which that was accomplished was a three page typewritten document entitled "Reasons for Judgment". It concluded with the words "Motion for a new trial as to Missouri Pacific is granted ..." It was dated and signed by the district judge. On January 31, 1983 orally, and by judgment of February 7, 1983, following application for "Rehearing, Reargument, and Reconsideration" filed by Mo-Pac on January 10, 1983, the trial judge recalled his prior order, finding on reconsideration that the jury instructions complained of constituted harmless error. He then denied plaintiffs' motion for new trial.
Plaintiffs contend that the "Reasons for Judgment" referred to above was a final judgment granting new trial, and that the decision on rehearing recalling this earlier judgment was invalid for failure to comply with La.C.C.P. arts. 1951 and 1971 through 1979 inclusive.
For granting a new trial C.C.P. arts. 1971 through 1979 inclusive are applicable.[13] They set forth peremptory and discretionary grounds for granting a new trial.
Those articles, however, are not applicable to an order (or judgment) recalling a judgment granting a new trial. Note that the peremptory grounds all relate to post-verdict discovery.[14] Furthermore recalling a judgment granting a new trial can hardly be construed as the granting of a new trial. It is simply the reversal of an order or judgment granting a new trial, upon reconsideration.
If there is any prohibition to recalling a judgment granting a new trial it is not for failure to comply with new trial articles 1971 through 1979 inclusive of the Code of Civil Procedure.
In any event we need not in this case decide this issue. The aggrieved Thomas plaintiffs will simply not be heard to complain of the ruling in light of the fact that they have in this proceeding been afforded complete review and partial success upon appellate review of the judgment entered against them below.

*1289 Decree

The judgments of the district court and the Court of Appeal insofar as they dismissed the claims of the Thomas plaintiffs are reversed. The judgments insofar as they dismissed the claims of all plaintiffs against the State of Louisiana are affirmed. Consistent with this opinion judgment must be entered in the Thomas plaintiffs' favor and against Missouri Pacific for one-third of the damages sustained by them. The case will be remanded to the Court of Appeal for determination of those damages and for entry of judgment consistent with the views expressed herein.
AFFIRMED IN PART; REVERSED IN PART; REMANDED TO THE COURT OF APPEAL.
DIXON, C.J., concurs.
DENNIS, J., concurs and will assign reasons.
MARCUS, BLANCHE and LEMMON, JJ., dissent and assign reasons.
BLANCHE, Justice (dissenting).
The jury did not find Herman Thomas to be 100% at fault because of an erroneous jury instruction. Rather, it found Thomas at fault because he drove onto the railroad tracks when the train was in such a close proximity that the train could not have stopped in time to avoid the accident. Even the majority admits that if the train had been traveling at the 20 MPH speed limit when the car crossed the tracks, the train would have been unable to stop in time to avoid the accident. The majority bases its assignment of 33% of the fault to the railroad on the idea that the cause-in-fact of the accident was the train going 10 to 15 MPH over the speed limit, because had the train been traveling at the slower speed, Thomas would have had more time to hear the train's warning signals. This assumption I suppose takes into account the fact that the windows were up and the occupants were listening to a tape of gospel music.
The train began sounding its whistle 1500 feet from the intersection. It's headlight was burning brightly. Thomas surely could have heard the train's whistle and seen the train coming if he had been paying attention to his driving. He had more than enough time to stop the car after he emerged from behind the building. It was Thomas' failure to keep a lookout and ascertain whether a train was coming or notnot the train's speedthat was the sole cause-in-fact of this accident.
I respectfully dissent.
MARCUS, Justice (dissenting).
I agree with the trial judge's conclusion that the state was not liable. Also, I am unable to say the jury was clearly wrong in finding that the railroad was not at fault. Accordingly, I dissent from allowing plaintiffs to recover against the railroad.
LEMMON, Justice, dissenting.
The trial judge's granting of a new trial was an interlocutory ruling, not a final judgment, and could be reconsidered at any time, as long as the district court retained jurisdiction. Therefore, the trial judge did not exceed his authority in vacating his order which had granted a new trial.
As to the merits of the suit against the railroad, I might agree with the majority's "but for" determination that the train's speed 15 miles per hour in excess of the railroad's rules was a cause-in-fact of the accident.[1] However, I disagree with the remainder of the majority's duty-risk analysis by which liability is imposed on the railroad.
*1290 The railroad had the duty to travel at a safe speed within the city. The municipal speed limit of 45 miles per hour for trains traveling within the city was a factor to be considered in determining whether 35 miles per hour was a safe speed. The railroad also had a rule restricting speed of trains within the railroad yard (the crossing was barely within the yard) to 20 miles per hour, but the purpose of that safety rule was to protect equipment and personnel within the yard. The risks to a motorist at this particular crossing were no different than the risks to a motorist at any other crossing within the city. In my opinion, the train's traveling at 35 miles per hour did not violate any duty owed by the railroad to a motorist at this particular crossing.
Finally, the building owned by the State deprived Thomas of many additional seconds of opportunity to observe the train, and any theory of imposition of liability on the basis of deprivation of opportunity of observation should apply equally to the State.
NOTES
[1] Herman Thomas was survived by his widow and four adult daughters. The Thomas plaintiffs sued Mo-Pac, the State, the City of Alexandria, and the Henry defendants. Prior to trial the action against the City of Alexandria, was dismissed without prejudice. The State filed third-party demands against Mo-Pac and the Henry defendants. The Henry defendants filed a third-party demand against Mo-Pac.
[2] Florine Beard sued the railroad, the engineer, Billy R. Adams, the State of Louisiana, and the unopened succession of Herman Thomas. Prior to trial. Beard settled with Mo-Pac, Adams, and Thomas, leaving for trial only the action against the State. The State filed a third-party demand against Mo-Pac. In addition, the State filed a third party demand against Manuel and Bonnie Henry and John and Judy Hall, hereinafter referred to as the "Henry defendants" alleging that they had erected the metal storage building and that they and not the State, owned it at the time of the accident.

Sandra Mock was survived by four minor children. Through their provisional tutrix, the Mock children sued Mo-Pac and the State. Prior to trial the Mocks settled with Mo-Pac. The State filed third-party demands against Mo-Pac and the Henry defendants.
[3] Mo-Pac demanded a jury trial of all the actions against it. Thus, the case that went to trial consisted of a combined jury trial wherein the Thomas' claim against Mo-Pac was tried, and a bench trial wherein all plaintiffs' claims against the State, and Thomas' claims against the Henry defendants, was tried.

The trial judge ruled that the State, and not the Henry defendants, was owner and custodian of the metal storage building that blocked the view at the crossing in question, and subsequently granted judgment exonerating the Henry defendants. No appeal has been taken from that judgment.
[4] When this error was reurged post-trial the judge considered it sufficiently significant that he granted a new trial. He later recalled that order. See the later discussion in this opinion.
[5] R.S. 45:563 provides in pertinent part:

"No person shall drive or propel any automobile or other motor driven vehicle upon the intersection of a railroad track and a public highway or municipal street at grade crossing without first stopping at a distance of not less than ten feet nor more than fifty feet from the nearest track and looking for approaching trains ..."
[6] R.S. 32:171(A) provides:

A. Whenever any person driving a motor vehicle approaches a railroad grade crossing under any of the circumstances stated in this Section, the driver of such vehicle shall stop within fifty feet but not less than fifteen feet from the nearest rail of such railroad, and shall not proceed until he can do so safely. The foregoing requirements shall apply when:
(1) A clearly visible electric or mechanical signal device gives warning of the immediate approach of a railroad train.
(2) A crossing gate is lowered or when a human flagman gives or continues to give a signal of the approach or passage of a railroad train.
(3) A railroad train approaching within approximately nine hundred feet of the highway crossing emits a signal in accordance with R.S. 32:168, and such railroad train, by reason of its speed or nearness to such crossing, is an immediate hazard.
(4) An approaching railroad train is plainly visible and is in hazardous proximity to such crossing.
[7] Restatement of Torts. Negligence § 431; Prosser, Law of Torts (2nd ed. 1955) § 44 p. 218. Dixie Drive It v. American Beverage Co., supra.
[8] If the train had been travelling at 20 m.p.h. it would still have been unable to stop within the 200 feet from where the engineer first saw the Thomas vehicle.
[9] Defendants' expert's calculation of the train's speed based upon its length, weight and stopping distance was 34 m.p.h. Plaintiff's expert using the same calculations placed the train's speed in excess of 45 m.p.h.
[10] La.C.C. art. 2323 provides:

"When contributory negligence is applicable to a claim for damages, its effect shall be as follows: If a person suffers injury, death or loss as a result of his own negligence and partly as a result of the fault of another person or persons, the claim for damages shall not thereby be defeated, but the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death or loss.
[11] La.C.C. art. 2317 provides:

We are responsible, not only for the damages occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications.
The modifications are set forth by Articles 2318-2322.
[12] On February 9, 1981, just four months before the accident, the state purchased the building from John Hall and Manuel Henry. The land on which the building was situated was in the path of I-49. The state intended to move the empty storage building to another location to make way for the interstate highway.
[13] Article 1951 relative to "amendment of judgment," is not especially pertinent here.
[14] La.C.C.P. art. 1972 provides:

A new trial shall be granted, upon contradictory motion of any party, in the following cases:
(1) When the verdict or judgment appears clearly contrary to the law and the evidence.
(2) When the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial.
(3) When the jury was bribed or has behaved improperly so that impartial justice has not been done.
[1] The correctness of the but-for determination of cause-in-fact is not free from doubt. If the train had been traveling at 20 miles per hour, Thomas would have had three to four additional seconds to hear and see the train. Nevertheless, the train had been sounding its whistle and shining its light for some time prior to the collision, and Thomas failed to hear or observe these signals because his windows were up and his air-conditioning and tape player were on.