564 So.2d 352 (1990)
Lawrence PERCLE
v.
Danny T. OUBRE, Beck-Stein Services, Inc., Liberty Mutual Insurance Company, State of Louisiana, Department of Transportation and Development.
No. CA 89 0299.
Court of Appeal of Louisiana, First Circuit.
May 30, 1990.
Writ Denied October 12, 1990.
*353 Jerald P. Block, Thibodaux, for plaintiff and appellantLawrence, Margaret B., and Lester Percle.
Sidney L. Patin, Houma, for defendant-intervenor and appellantFireman's Fund Ins. Co.
Earl A. Bridges, Jr., New Orleans, for defendants & appelleesDanny T. Oubre et al.
Gerald Jeffers, Atty. Gen., Baton Rouge, for defendant and appelleeDept. of Transp. & Development.
John C. Tollefson, New Orleans, for defendants and appelleesWestern World & Tudor Ins. Companies.
Before COVINGTON, C.J., WATKINS, J., and DOHERTY, J. Pro Tem.[*]
COVINGTON, Chief Judge.
This appeal is from a judgment pursuant to a jury verdict in a personal injury suit following an intersectional collision between a pickup truck and an 18-wheeler. Both the plaintiffs[1] and the intervenor-worker's compensation carrier have appealed from the judgment, which found in favor of defendants and rejected plaintiffs' and the intervenor's claims. We affirm.
The accident occurred at the intersection of Louisiana Highway 20 and Louisiana Highway 648 near or in Thibodaux, Louisiana. Highway 20 at that location is a 4-lane divided highway running north-south, with 2 lanes for each opposing direction of travel and separate left-turn lanes. The median separating the north-south lanes is fairly wide, ranging from 40 to 60 feet. Highway 648, also known as Duplantis Street, is a 2-lane road running in an east-west direction. The intersection is controlled by a typical traffic light which does not have a separate left turn signal; left-turning motorists are required to yield to oncoming traffic with the green light. The accident occurred on May 6, 1983, shortly after noon, on a clear day when the streets were dry.
Plaintiff Lawrence Percle was driving his pickup truck, preparing to make a left turn *354 from the northbound left-turn lane of Highway 20 onto Duplantis Street. Riding with him as a passenger was his immediate supervisor, Wendell Ward; both men were employed by Olympic Construction Company. Defendant Danny Oubre was driving a tractor-trailer loaded with river sand southbound on Highway 20, in the right outside lane, approaching the intersection. He was employed at the time by defendant Beck-Stein Services, Inc. As both vehicles approached the intersection from opposite directions, Highway 20 traffic had a green light for both north and southbound directions. Danny Oubre saw Lawrence Percle begin turning left through the median, and therefore blew his air horn while slowing slightly by letting up on his accelerator. He then looked to his right to make certain that a vehicle stopped on Duplantis Street for the light would not turn "right on red" directly in front of him. When he looked back, Percle had proceeded directly into his path, so he jammed his brakes but was unable to avoid the collision.
Ward was killed immediately by the impact and Percle sustained various injuries, the most serious of which was a closed head injury. Percle apparently suffers from traumatic amnesia and claims to have no memory of the events of the accident.
Lawrence Percle and his parents filed suit against Oubre, Beck-Stein, and Beck-Stein's three insurers, Liberty Mutual Insurance Company, Western World Insurance Company, and Tudor Insurance Company, as well as the State through the Department of Transportation and Development, alleging driver negligence and failure by the State to provide adequate traffic controls, i.e., a left-turn signal, (negligence and strict liability) at the intersection. The jury found no negligence on the part of the defendants or defect in the intersection, pursuant to special interrogatories on a verdict form, and judgment was rendered accordingly, dismissing plaintiffs' claims. The trial judge also rendered judgment dismissing the claims of intervenor Fireman's Fund Insurance Company for reimbursement of compensation benefits and medical expenses paid to Lawrence Percle.
Plaintiffs have appealed, urging five assignments of error. Fireman's Fund has also appealed, primarily arguing that the trial court erred in not retroactively applying La.R.S. 23:1102(C) to reimburse Fireman's Fund for the benefits it paid to or on behalf of Percle. We will address plaintiffs' contentions first.

ASSIGNMENT OF ERROR NO. 1
The plaintiffs assert that the instructions given by the trial judge to the jury on comparative negligence were erroneous and therefore improperly influenced the verdict in favor of the defendants.
The defendants argue that the instructions, even if erroneous, did not affect the jury's verdict because the jury never reached the question of Lawrence Percle's negligence. After answering interrogatories in the negative on the issues of defendants' negligence, the jury was not required to answer any other questions on the verdict form.
The trial judge gave detailed general instructions on comparative fault as a defense.[2] The portion of the instructions to *355 which plaintiffs object occurred when the judge addressed the specific point of violation of a statute as comparative negligence:
In the addition to the general standard, the following specific statute is applicable to the plaintiff's conduct. Louisiana Revised Statute 32, Section 122 provides in part as follows:
`The driver of a vehicle within an intersection intending to turn left shall yield the right of way to all vehicles approaching from the opposite direction which are within the intersection or so close thereto as to constitute an immediate hazard.' The ordinary prudent person will normally obey the statute which applies to his conduct, but in exceptional circumstances, even a violation of the statute may be reasonable. You must consider, in the light of all the circumstances, whether an ordinary prudent person in plaintiff's position would be reasonable in violating a statute. If so, then the violation is not substandard conduct. But if not, the violation is unreasonable, and therefore below the standard of care for which we hold the plaintiff in this case. If you find that the plaintiff violated the statute and that the violation was unreasonable, you may find that the plaintiff is not entitled to recover.

[Emphasis added].
Plaintiffs' counsel objected to the charge as given, which varied from the written charges that had been accepted by all parties, but the objection was overruled. By a vote of ten to two, the jury found in favor of defendant Danny Oubre on the issue of negligence. The question was posed as follows: was the accident caused by the negligence of Oubre; that is, was his conduct below the standard of care owed to Lawrence Percle and thus a legal cause of plaintiff's damages?
On the question of negligence or strict liability on the part of the state, the jury voted nine to three in favor of the state. Two separate interrogatories, one on negligence and one on strict liability, were required to be answered. The jury was then *356 instructed to answer nothing further if their first three answers were negative. Interrogatory number four, which the jury did not reach, would have dealt with the question of Lawrence Percle's fault, if any.
The plaintiffs argue that the phrasing of the instructions in question indicated that violation of a statute was a complete bar to plaintiffs' recovery, and thus effectively substituted contributory fault for comparative fault. They cite two cases in particular as support for their position that the verdict and judgment herein should be disregarded, Thomas v. Missouri Pacific Railroad Company, 466 So.2d 1280 (La. 1985), and Higgins v. Johnson, 349 So.2d 918 (La.App. 1st Cir.), writ refused, 351 So.2d 161, 162 (La.1977). We are compelled to agree.
Our review of the jurisprudence in this area reveals that in cases where conflicting instructions in the law are given, the courts have generally held the jury verdicts to have been impugned by the error. While it is true as a general rule that the adequacy of jury instructions by a trial court must be determined in the light of the jury instructions as a whole (see Higgins v. Johnson, supra), there seems to be a division between the cases in which instructions are less detailed than requested, or vague in part from those in which an actual conflict in the legal principles given exists in the charges, or the incorrect charge was given. In the latter group of cases, the courts consistently hold that the erroneous instructions are prejudicial, and thus accord no weight to the jury verdict. See Ragas v. Argonaut Southwest Insurance Co., 388 So.2d 707 (La.1980); Ryland v. Law Firm of Taylor, Porter, Brooks, and Phillips, 496 So.2d 536 (La.App. 1st Cir.), writ denied, 497 So.2d 1388 (La.1986).
In Thomas v. Missouri Pacific Railroad Company, 466 So.2d 1280 (La.1985), an automobile and a train collided, killing the driver and one passenger and seriously injuring another passenger. It was established at trial that the automobile driver inattentively drove across the tracks into the path of the oncoming train, which was travelling at the legal speed limit but above the railroad's own recommended speed for that crossing. After a jury verdict found in favor of the defendants, the plaintiffs appealed, alleging erroneous jury instructions were prejudicial rather than harmless error. The trial judge had given a correct charge regarding the qualified duty of a motorist to stop at a railroad crossing by reading LSA-R.S. 32:171(A). However, he had also given a conflicting charge by reading LSA-R.S. 45:563, an earlier statute tacitly repealed by the later one, which stated that a motorist had an absolute duty to stop at a crossing.
The defendants there presented the same arguments that the defendants herein have urged: 1) since the correct charge was given as well as an incorrect one, the jury was probably not improperly influenced, and 2) the motorist's negligence was not addressed by the jury in the interrogatory answers after they found no negligence on the part of the defendants.
Our supreme court rejected the defendants' arguments, stating that the instructions given "erroneously placed a duty on plaintiff, which ... was relevant to the jury's proper consideration of the fault as between the railroad and the deceased [plaintiff] Herman Thomas," 466 So.2d at p. 1284. Quoting Hebert v. Gulf States Utilities Co., 426 So.2d 111 (La.1983), the court then concluded, "we give less credence to the outcome in the district court because the jury charges given probably contributed to the result favorable to the defense." Ibid.
We are constrained to follow the dictates of Thomas and the other jurisprudence on this issue. When the jury is given incorrect instructions on the law no weight should be accorded the judgment of a trial court and the verdict is not entitled to a presumption of regularity. Thomas, supra., and the cases cited therein. Here, although the trial judge did give correct instructions regarding comparative negligence, he also gave an apparently conflicting charge regarding the negligence of a driver who violates a statute, suggesting that contributory rather than comparative negligence applied. Under these circumstances, *357 we cannot say that the jury was not improperly influenced by the erroneous charge that a violation of LSA-R.S. 32:122 allowed the jury to find plaintiff not entitled to recover.
However, under Gonzales v. Xerox Corporation, 320 So.2d 163 (La.1975), and its progeny, an appellate court need not remand if it has all the facts before it, but may decide a case based on the record. Therefore, we will now consider the case de novo, rendering all but one of plaintiffs' remaining assignments of error[3] moot.

Defendants' Conduct Under the Duty-Risk Analysis

I. Danny Oubre
As the plaintiffs have alleged the negligence of this defendant, we must examine his conduct using the duty-risk approach:
(1) Was Oubre's conduct a cause-in-fact of Percle's harm?
(2) Did Oubre have a duty to protect this plaintiff from this harm?
(3) Was there a breach of this duty?
LeJeune v. Rayne Branch Hospital, 556 So.2d 559 (La.1990).
It is undisputed that plaintiff made a continuous non-stop left turn through the 40-foot median and the left southbound lane of Highway 20 and was in the right lane perpendicular to the road when the impact occurred. Plaintiffs urge that the testimony of their expert, former State Trooper Greg Whitney, established that Oubre was the cause-in-fact of the accident. Whitney testified that Oubre could have avoided the accident if he had applied his brakes at the time he first saw the Percle vehicle, some 230 feet away from the point of impact, instead of blowing his horn. He also stated that this conclusion was true for any speed by the Oubre vehicle between 30 and 40 miles per hour, the range possible given the measurements of skid marks and time distances.
However, Whitney also admitted that Percle could have avoided the accident by applying his brakes, instead of proceeding with his left turn. Moreover, the two independent eyewitnesses to the accident both testified that Percle had no obstruction to block his view of the tractor-trailer, that the rig's horn could be clearly heard, and that Oubre had the green light. One of the witnesses further stated there was no reason Percle could not have stopped.
After examining all the evidence and testimony, we cannot say that Danny Oubre was negligent. He was proceeding between 30 and 40 miles per hour in a speed limit zone of 40 miles per hour. He sounded his horn when he first observed Percle in the left turn lane for the northbound traffic and eased off his accelerator. For him to have ignored the other traffic at the intersection so he could watch the Percle vehicle exclusively, as plaintiffs seem to suggest, would have been negligence on his part regarding other motorists. Likewise, for Oubre to have immediately started braking the moment he spotted the Percle vehicle, possibly adding to traffic congestion and completely ignoring his statutory right-of-way, as well as common sense driving practices, was not a part of any duty that reasonably could be expected of him. The testimony established that it was common practice for left-turning motorists to pull into the median itself, which was at least 40 feet wide. Thus, the fact that Percle was doing so, in and of itself, at the time when Oubre spotted him, was not an automatic trigger requiring extraordinary care on the part of Oubre, who was entitled to assume that Percle would obey the law and yield the right-of-way to oncoming traffic with the green light. That Percle either failed to see what he should have seenan unobstructed view of a loaded tractor-trailer rigor intentionally ignored his statutory duty to yield the right-of-way and tried to beat the truck, are the only two possible explanations for the accident.
*358 We find, based on the evidence presented of Percle's slow speed in moving across the busy highwaybetween 10 and 20 miles per hour at a continuous ratethat the more likely explanation is the former: Percle failed to see what he should have seen and was under the most basic duty as a driver, and especially as a left-turning motorist, to observe.

II. DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT
Plaintiffs alleged that DOTD was both negligent for failing to install a left turn signal at the intersection and also strictly liable for defectivelydesigned left turn lanes which allowed oncoming left-turning vehicles to obstruct the visibility of opposing left-turning motorists. They offered the testimony of an expert in highway design and traffic engineering, Dr. Peter Parsonson. His testimony on the negligence issue was that when four left-turn accidents occur at a given intersection within a twelve-month period, left turn phasing is warranted, although not strictly required. Since the evidence indicated five accidents in the year prior to Percle's accident, plaintiffs urge DOTD was negligent.
On the issue of strict liability, Dr. Parsonson testified that the design of the left turn lanes was defective, in that these lanes were spaced so that opposing left-turning motorists obscured each others' visibility of oncoming traffic.
Countering this testimony was that offered by the State of its own highway design and traffic engineering expert, Dr. Ned Walton, and of the District Traffic Operations Engineer for the region, Lawrence Harry. Dr. Walton testified that he found no design defect in the intersection under any engineering guidelines or standards of which he was aware. He further stated that after driving through the intersection from all directions, including the left turn standpoint, he found no obstruction of view even with other vehicles in the left turn lanes.
Lawrence Harry testified that part of his job was to work with the abnormal location survey, which compiles data from all the accident reports filed on state highways and lists locations with an abnormal rate of accidents. He stated that this location did not appear on the survey at all, which lists 50 to 100 sites, and which emphasizes only the top 5 sites for remedial action by DOTD, due to limitations of time and resources. Harry also testified that the factor used by plaintiff's expert, Dr. Parsonson, the occurrence of four accidents within one year at that location, in his conclusion that a left-turn signal was warranted, was only one of five factors to consider in the Engineering Directives of Standards Manual (EDSM): the accident experience, the total delay, the traffic volume, traffic conflicts, and the capacity of the intersection. Because one of the five factors was present was not sufficient for modification of an intersection.
We have carefully examined all of the evidence and testimony and find no negligence or strict liability on the part of the State through DOTD. Even plaintiffs' own expert, after testifying that the intersection was defective, admitted in his testimony that he believed Percle was able to see the upper half of the approaching 18-wheeler. The testimony of the lay eyewitnesses as to the visibility and audibility of the truck, combined with that of the State's experts, is more convincing than plaintiff's evidence.[4] We find that the sole cause of this accident was the driver fault of Lawrence Percle. Accordingly, that portion of the judgment dismissing plaintiffs' claims against the defendants was correct.

*359 ASSIGNMENT OF ERROR NO. 4
Plaintiffs argue that their motion for new trial, based on the discovery of new evidence, should have been granted by the trial court. We find no merit to this argument but nevertheless will address it briefly.
The new evidence alluded to was the proposed testimony of one of Percle's neighbors that she was at the intersection at the time of the accident, and that the traffic light was yellow for Danny Oubre when he proceeded through the intersection. The trial judge concluded that her testimony would not have made any difference to the outcome of the litigation, saying "all of your other witnesses testified the light was green."
LSA-C.C.P. art. 1972 provides as a peremptory ground for the granting of a new trial "[w]hen the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial." Setting aside the question of due diligence, we agree with the trial judge that this evidence would not have made any difference to the outcome. We do not deem this testimony "important to the cause" in view of all the evidence and testimony previously discussed.
The denial of plaintiff's motion for a new trial was correct.

INTERVENOR'S ASSIGNMENT OF ERROR NO. 1
Fireman's Fund Insurance Company argues that the trial judge erred in not applying LSA-R.S. 23:1102(C) retroactively. That statute provides liability on the part of a third party defendant to the employer or employer's insurer in the event of a settlement with the employee, where suit has been filed in which the employer or insurer has intervened, and where the third party defendant fails to obtain written approval of the settlement from the employer or insurer, if the employee does not reimburse his employer or the insurer for compensation and medical benefits paid. The statute's effective date was July 1, 1983; Percle's accident occurred on May 6, 1983, and settlement between Lawrence Percle and Danny Oubre, Oubre's employer, and its insurer was executed on January 8, 1986.
This issue has not been addressed previously in this Circuit. Our brethren in the Fourth Circuit have deemed the statute procedural and thus applied it retroactively in Wells v. K & B, Inc., 488 So.2d 222 (La.App. 4th Cir.1986), stating:
This law does not affect plaintiff's cause of action as a worker's compensation claimant. It concerns the procedure for the settlement of claims and specifically prescribes penalties against third parties who settle claims without the approval of the intervening employer. This law is not substantive but is procedural, so that it applies to this pending suit.
[Citation deleted]. 488 So.2d at p. 224.
However, our brethren in the Third and Fifth Circuits have ruled that this statute is substantive, and thus refused to apply it retroactively.
In Miller v. J.P. Owen Power Company, Inc., 509 So.2d 1038 (La.App. 3d Cir.1987), the court considered the analysis of the Fourth Circuit in Wells but rejected it, finding some significance in the Legislature's failure to designate a retroactive application of § 1102(C). It further analyzed the statute's effect as follows:
A substantive law is a law which generally creates new rights where none previously existed. In our opinion La. R.S. 23:1102 is substantive in nature. The amended statute creates an obligation on the part of plaintiff to obtain approval of the employer for any agreement with third parties, thus withdrawing certain rights from plaintiffs and creating other rights to employers in the same action. Additionally, the statute as amended also creates an obligation on the part of a third party to obtain approval of an intervenor for any agreement with plaintiff, withdrawing certain rights from third parties and creating other rights to intervenors in the same action. Thus, because the amended statute creates new rights where none previously *360 existed, we find that it is substantive in nature.
[Footnote deleted]. 509 So.2d at p. 1040.
Our brethren in the Fifth Circuit reached the same conclusion on the substantive nature of § 1102(C) as the Miller court for the same reason, finding that a new obligation was created on the part of a plaintiff and certain rights were awarded to the employer that did not previously exist. See Babin v. Saturn Engineering Corporation, 501 So.2d 857, 861 (La.App. 5th Cir. 1987). Additionally, the Babin court found that an objective reading of the statute indicates that the date of the original cause of action, not the date of the compromise, triggers the statute. Thus, it is the date of a plaintiff's accident which is the crucial date. 501 So.2d at p. 861.
After careful consideration, we must respectfully decline to follow our brethren in the Fourth Circuit. We agree with our brethren in the Third and Fifth Circuits that LSA-R.S. 23:1102(C) is substantive in nature because of the newly created rights and obligations not previously in existence. Therefore, we will not apply the statute retroactively.
This assignment of error has no merit.
We decline to discuss intervenor's remaining assignments of error, finding no manifest error on the part of the trial judge on these issues.
For the reasons delineated, we determine that the trial judge's ruling on the jury instructions was erroneous. However, after our de novo consideration of the record, we find the judgment dismissing plaintiffs' and intervenor's claims to be correct and affirm it. Costs of this appeal are to be divided equally between plaintiffs and intervenor.
AFFIRMED.
LEWIS S. DOHERTY, III, Judge Pro Tem. (retired), dissenting.
While I concur in the majority opinion insofar as it holds that the jury instructions were erroneous and prejudicial, I cannot agree that there was no duty whatsoever owed by Oubre to apply his brakes when presented with an imminent collision. It is not a reasonable response to a danger to simply sound a horn and maintain a 40 m.p.h. speed, and I would assess some fault to a driver who blatantly abuses his right-of-way.
I respectfully dissent.
NOTES
[*] Judge Lewis S. Doherty, III, retired, is serving as judge pro tem by special appointment of the Louisiana Supreme Court to fill the vacancy created by the temporary appointment of Judge Melvin A. Shortess to the Supreme Court.
[1] Lester and Margaret Percle, the parents of Lawrence Percle, were made additional parties-plaintiffs, seeking damages for grief, anguish, loss of services and society which they sustained as a result of their son's disability.
[2] The charges as read by the trial judge were as follows:

In addition to denying any negligence or strict liability, the defendant, that the defendant was a legal cause of any injury of the plaintiff, the defendants have raised the defense of comparative fault. It is the law of Louisiana that the substandard conduct of injured persons which contribute to their own injury will reduce their recover[y] but not bar it entirely.
Civil Code Article 2323 provides as follows: `When contributory negligence is applicable to a claim for damages, its effect shall be as follows: If a person suffers injury, death or loss, as a result partly of his own negligence, and partly as the result of the fault of another person or persons, the claim for damages shall not thereby be defeated, but the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death or loss.' Comparative fault is fault on the person injured which cooperates in some degree with the negligence of another and helps to bring about an injury, death or loss. By the defense of comparative fault, the defendant in effect alleges that even though he may have committed some negligent act or omission which is one of the causes of the accident, the plaintiff by his own failure to use ordinary care under the circumstances for his own safety at the time and place in question, was himself a legal cause of any injuries, loss or damage he may have suffered. You must decide whether the plaintiff was at fault, and if so, what degree of his own fault, if any, contributed to his own injury.
In deciding whether the plaintiff contributed to his own injury, you must determine whether the plaintiff's conduct fell below the standard which we must reasonably expect of a person to exercise for his own safety and protection. This standard being that of a reasonable person under like circumstances. The burden is on the defendant alleging comparative fault to prove any fault of the plaintiff. The defendant has the burden to establish by the preponderance of the evidence that the the [sic] plaintiff in this case was at fault and that this fault contributed to his injury and damage he may have sustained. If you find that by the preponderance of the evidence in this case does not establish that the plaintiff was at fault in any degree, then you should return a verdict for the plaintiff without assessing any percentage of fault to the plaintiff. But, if you should find that the plaintiff was at fault in some degree, then you must take into account the degree of fault attributable to him in returning your verdict. The fact that the plaintiff may have been at fault, in part, however, does not prevent or bar his recovery, it only reduces the amount that he will recover. It should be noted that with regards to the strict liability claim of plaintiff and the defense of that claim raised by the defendant, State of Louisiana, of comparative fault, the failure of plaintiff to use ordinary care must have been a substantial factor in causing his injury in order for you to conclude that the defendant established his defense as to the strict liability claim.
In addition to the general standard, the following specific statute is applicable to the plaintiff's conduct. Louisiana Revised Statute 32, Section 122 provides in part as follows: `The driver of a vehicle within an intersection intending to turn left shall yield the right of way to all vehicles approaching from the opposite direction which are within the intersection or so close thereto as to constitute an immediate hazard.' The ordinary prudent person will normally obey the statute which applies to his conduct, but in exceptional circumstances, even a violation of the statute may be reasonable. You must consider, in the light of all the circumstances, whether an ordinary prudent person in plaintiff's position would be reasonable in violating a statute. If so, then the violation is not substandard conduct. But if not, the violation is unreasonable, and therefore below the standard of care for which we hold the plaintiff in this case. If you find that the plaintiff violated the statute and that the violation was unreasonable, you may find that the plaintiff is not entitled to recover.
[3] Plaintiffs have raised the exclusion of evidence by the trial court as error. Since this evidence was included in the record as a proffer and we have the complete record before us for our de novo consideration, we need not specifically address this argument, and may deem all but one of plaintiffs' remaining assignments of error moot.
[4] The case relied upon heavily by plaintiffs to establish DOTD's liability, Hatcher v. State of Louisiana, Through the Department of Transportation and Development, 467 So.2d 584 (La.App. 3rd Cir.1985), is readily distinguishable from the case at bar. In Hatcher, the intersection was widely known as the most dangerous intersection in a four-parish area. Here, the intersection did not even appear on the abnormal location survey. The accident site in Hatcher was under construction at the time of the accident, and large mounds of dirt and items of heavy equipment obscured visibility of the drivers, unlike the situation at bar where no obstructions existed to Percle's view of the oncoming rig.